## IN THE UNITED STATES DISTRICT COURT
## FOR THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MICHAEL PATRICK NORRIS,
     Plaintiff,

                                        CASE NO.:

v.

                                        DEMAND FOR JURY TRIAL

HONEYWELL INTERNATIONAL, INC.
     Defendant.

_____/

## COMPLAINT FOR
## DECLARATORY AND INJUNCTIVE RELIEF

Plaintiff MICHAEL PATRICK NORRIS (hereinafter "Plaintiff" or "Plaintiff Norris) does hereby complain as follows and allege against Defendant HONEYWELL INTERNATIONAL, INC. (hereinafter "Defendant" or "Honeywell"):

## INTRODUCTION

1. Plaintiff is a current employee of Defendant Honeywell International, Inc., as a lead sales representative focusing on private entities, not federal entities, and works wholly remotely. Plaintiff falls under OSHA as a non-federal employee.

2. Plaintiff alleges that Honeywell's "vaccine" mandate is unconstitutional and unlawful *ab initio* because it mandates the injection of unlicensed, experimental products without informed consent, namely, the mRNA

COVID-19 therapeutics by Pfizer/BioNTech, Moderna, and Johnson & Johnson.

3. The United States Supreme Court has long held that the right to refuse unwanted medical treatment is a fundamental human right.

4. Plaintiff further alleges that the mandate is unlawful because it mandates employees to be treated disparately based on his/their sincerely held religious beliefs and brings into question whether American employees should be required to choose between their/his livelihood and being coerced into taking an experimental, dangerous medical treatment.

5. Plaintiff seeks declaratory and injunctive relief against the Defendant, who is in gross violation of federal law, as well as Defendant's own rules, regulations, and procedures. Plaintiff also seeks injunctive relief against Defendant and its subsidiaries. Plaintiff seeks a jury trial on any and all claims or issues triable to a jury.

6. Honeywell's COVID-19-related liberty infringements rose to a company-wide COVID-19 vaccine injection mandate announced in or around May of 2021, including a mandate to disclose said vaccination status and information, in breach and violation of (1) internal Honeywell policies and procedures; (2) the United States Constitution; (3) various state statutes; (4) the Americans with Disabilities Act; (5) the Genetic Information Non-Discrimination Act;

(6) Title VII of the Civil Rights Act; (7) the right to privacy; (8) the denial of equal protection and due process; (9) breach of contract; (10) fraud; and (11) intentional infliction of emotional distress, etc.

7. Plaintiff seeks to recover all damages relating to Honeywell's vaccine mandate and related misconduct (and associated coercive mandates, including providing vaccine status information, weekly testing, constant masking, segregation, etc.).

8. Plaintiff also seeks to enjoin Defendant from ever enforcing its unlawful COVID-19 vaccine mandate, or from firing, terminating, punishing, retaliating, or otherwise further harming Plaintiff for not disclosing his vaccination status.

9. Plaintiff was treated disparately because of Defendant's unlawful COVID-19 "vaccine" and disclosure mandate.

10. Finally, and most importantly, there is no longer even a qualified "pandemic" or "emergency" under any current scientific standard that would justify *any* of the Defendant's actions, including, *inter alia*, the continued re-issuance of mRNA "vaccines" that are in fact genetic therapeutics and that are then mandated on all employees with no interactive process of reasonable accommodations and/or evaluation.

## JURISDICTION AND VENUE

11. This Court has subject matter jurisdiction over this case under 28 USC § 1331 because the case arises under the United States Constitution, federal laws [42 USC § 2000e et seq., 42 USC § 12101, 42 USC 2000ff-1(a)(1), 1(a)(2), and 1(b), 42 USC § 1983], and various common laws.

12. This Court has personal jurisdiction over Defendant because under *International Shoe* and its progeny, Defendant has at least minimum contacts with Florida such that traditional notions of fair play and substantial justice would not be offended by the exercise of jurisdiction.

13. Venue is proper in the Middle District of Florida, Tampa Division, because Honeywell and its affiliates, and leadership, have a place of business in and around Clearwater, Florida. Plaintiff Norris avers himself to personal jurisdiction in the Middle District of Florida, Tampa Division.

## PARTIES

14. Plaintiff **MICHAEL PATRICK NORRIS** is an individual and current employee of Defendant.

   a. Plaintiff Norris filed a charge of discrimination with the U.S. Equal Employment Opportunity Commission ("EEOC") on or around April 26, 2022.

b. Plaintiff Norris received his Notice of Right to Sue on or around April 28, 2022.

c. Plaintiff Norris has exhausted his administrative remedies.

15. Defendant **HONEYWELL, INTERNATIONAL, INC.** (hereinafter "Defendant" or "Defendant Honeywell") is a North Carolina corporation with its principal place of business in Charlotte, North Carolina. It has offices throughout the United States of America, including Tampa, FL.

## FACTUAL BACKGROUND and GENERAL ALLEGATIONS

### *Sincerely Held Religious Beliefs*

16. Plaintiff is a current employee of Defendant Honeywell International, Inc. who refuses to the forced disclosure of his vaccination status to his employer.

17. Further, Plaintiff objects to receiving a COVID-19 "vaccination" based on his sincerely held religious beliefs.

18. Plaintiff's religious beliefs are that (1) opposition to abortion and the use of fetal cell lines in the development of the vaccine; (2) belief that the mRNA technology utilized in some COVID-19 vaccines usurps God's creation of the human genome; and (3) that the body is a temple and taking the vaccine would defile that temple.

### *Defendant Honeywell's Code of Business Conduct*

19. Defendant issued a "Code of Business Conduct" (hereinafter the "Code") to all employees at the start of their employment. The goal of the Code is to uphold Defendant's commitment to integrity and ethics. The Code creates a contractual obligation for Defendant as well as Plaintiff for expectations, standards of practice, principles of conduct and rules of the workplace.

> The Honeywell Code of Business Conduct (our "Code") is designed to provide guidance to each of us regarding Honeywell's standards of integrity and compliance in all of our business dealings. Our Code is an integral element of the Honeywell Behaviors. It describes the basic rules of conduct that we, as One Honeywell, are expected to follow. In addition, provides helpful resources in the event we have a question or concern about proper conduct.

20. The Code details penalties for employees who violate the code and exceeds the limitations of the law and is specific to Defendant and its employees. Defendant expects that all employees, officers, and directors familiarize themselves with and follow the Code. A failure to comply with the Code carries consequences including disciplinary action, including termination.

> Our Code applies to all employees, officers and directors of Honeywell. Where appropriate, business partners working on our Company's behalf should also familiarize themselves with and follow our Code. If your job responsibilities require you to interact with representatives working on behalf of Honeywell, be sure to inform them of their responsibility to act in accordance with this Code and provide them with a copy. Their behavior must be consistent with our Code, other Honeywell policies, and applicable laws and regulations.

21. In the Code, Defendant contractually commits to creating an inclusive working environment.

> Honeywell is committed to maintaining an inclusive, safe, and respectful working environment for all employees, regardless of gender, race, color, ethnic background, age, religious belief, national origin, affectional or sexual orientation, gender identity, disability, marital status, veteran status, citizenship or impending citizenship, or any other characteristic protected by law. Employees should be able to work and learn in a safe, yet stimulating atmosphere and Honeywell will not tolerate intimidating, hostile, abusive, or offensive behaviors in our workplace. Honeywell has zero tolerance for such conduct, which will be considered harassment and is strictly prohibited.

22. Defendant's Code explicitly prohibits retaliation, encourages its employees to feel comfortable asking questions and raising concerns, protects those who do raise concerns, and creates an explicit duty for them to do so.

> It is important that you feel comfortable raising your questions and concerns. Honeywell will not tolerate any form of retaliation against you for making a good faith report of actual or potential misconduct. Making a report in "good faith" means your report is honest, sincere, and complete to the best of your knowledge. If you feel an act of retaliation has occurred, you should report your concerns via one of the methods outlined in "Asking for Advice and Voicing Concerns."
>
> If you become aware of a situation that may involve a violation of this Code, Company policy or any applicable law, or regulation, you have a responsibility to report it. Please note that failure to comply with our Code and Company policies can have serious consequences. Consequences may include disciplinary action, up to and

including termination, as well as possible civil or criminal penalties. Honeywell will treat all reports confidentially to the extent possible, consistent with the law, Company policy, and the Company's need to conduct a thorough investigation. Suspected violations may be reported by identifying yourself or by remaining anonymous. In Europe, specific processes have been implemented to comply with rules that limit anonymous reporting. You may contact the Integrity and Compliance Office with any questions.

All reports will be investigated promptly and thoroughly, consistent with applicable law and, upon the advice and approval of the Law Department, may be reported to the appropriate authorities. Employees have a duty to cooperate with Company investigations concerning potential violations of the Code or applicable Company policies.

Failure to cooperate fully in a Company investigation or the failure to be fully truthful when providing evidence or testimony in such investigation is grounds for disciplinary action, including termination. It should be emphasized that appropriate corrective or disciplinary action for Code violations will be taken whenever necessary.

23. Defendant's Code further contractually obligates it to protect its employees' personal data and only collect necessary personal data.

We should only collect, access, use, or disclose personal data for appropriate business purposes. In addition, we should use the minimum amount of personal data needed to accomplish a task and avoid processing personal data if the objective of the processing can be achieved without processing personal data.

24. Within the Code, Defendant commits to providing a healthy and safe workplace for all employees.

By integrating health, safety, and environmental considerations into all aspects of our business, we protect our people and the environment, achieve sustainable growth and accelerated productivity, drive compliance with all applicable regulations, and develop the technologies that expand the sustainable capacity of our world. Our Health, Safety, and Environment, Product Stewardship, and Sustainability (HSEPS) Management System reflects our values and help us meet our business objectives. Adherence to our HSEPS management system helps ensure that our employees, communities, and environment remain safe. If we believe that conditions are in any way unsafe, we must stop work immediately. Refer to the section on "Protecting the Environment" for more information.

25. Defendant's Code contractually commits it to respecting human rights.

Our Code, along with other Honeywell policies, establishes practices and standards that address a broad range of human rights and workplace issues. Honeywell respects and values the diversity reflected in our various backgrounds, experiences and ideas. Together, we provide each other a diverse and inclusive work environment that fosters respect for all of our coworkers and business partners. Refer to the section titled "Respecting Each Other and Promoting a Positive Workplace" for more information.

### *Defendant Honeywell's COVID-19 Vaccine Mandate*

26. In or around May of 2021, Defendant mandated that ALL employees receive the COVID-19 "vaccine."

27. On or around June 3, 2021, Defendant held an employee-wide contest, with the only rules being that if an employee disclosed their vaccination status as having received the vaccine, they would be entered into a drawing to win

prizes, including a $5,000.00 cash prize. Non-vaccinated employees were prohibited from joining the contest.

28. On or around July 21, 2021, vaccinated employees were given green ESD badge holders denoting that they were "clean" or vaccinated. Defendant informed its employees that it was mandatory ONLY for non-vaccinated employees to wear a mask at all times in Defendant's facilities. Vaccinated employees with a green ESD badge holder were allowed to stop wearing masks and stop practicing any social distancing measures.

29. On or around September 9, 2021, President Biden issued E.O. 14042 entitled "Ensuring Adequate COVID-19 Safety Protocols for Federal Contractors." This order required that all employees who work on or in connection with a federal contract be fully vaccinated against COVID-19 or receive approval for a medical or religious exemption.

   a. The United States Supreme Court stayed the enforcement of E.O. 14042 (the "OSHA mandate") for large private employers on or around January 13, 2022.

30. On or around September 9, 2021, Defendant sent an e-mail to its unvaccinated employees that they would be terminated if they were not fully vaccinated by December 8, 2022.

31. On or around September 12, 2021, Defendant's unvaccinated employees received additional discriminatory and harassing emails compelling the non-vaccinated employees to receive the COVID-19 "vaccine;" implying in very clear language that any non-vaccinated person is a "threat to society."

32. On or around October 5, 2021, Defendant notified all of its employees that if they were not vaccinated by January 4, 2022, they would be terminated.

33. On or around October 12, 2021, Defendant issued a memorandum (hereinafter the "Vaccine Mandate") officially mandating that all employees receive the COVID-19 vaccine, to be effective December 1, 2021.

34. The Vaccine Mandate from Defendant explicitly stated that employees would be terminated if they were not fully vaccinated by January 4, 2021.

35. On or around October 13, 2021, Defendant sent a corporate e-mail stating how "most" employees subject to the Vaccine Mandate could apply for exemptions, Plaintiff forwarded this e-mail to his Human Resource representative, Kurt Justice, to request additional information on Defendant's process, additional directives, or policies for the non-federal employees, but no response was provided.

36. On or around October 29, 2021, additional mass communication was sent to all employees within the above described "most" category, specifically that employees seeking an exemption from the Vaccine Mandate on the basis of

religion must complete a "Request for U.S. Religious Exemption/Accommodation Related to COVID-19 Vaccine" form on or prior to November 1, 2021.

37. On or around November 12, 2021, an OSHA ETS mass communication e-mail was sent out, with attention to the first and second paragraphs, stating that non-federal employees would be subject to OSHA/ETS. Notably, in this November 12, 2021, e-mail, the verbiage changed to state "all" employees, instead of the former "most." Plaintiff is a remote employee working on and with the private sector and was never informed or lead to believe these mandates applied to his position.

38. Throughout the months of November 2021 and December 2021, Plaintiff received daily emails from DocuSign demanding that he sign the Application on Exemption from Vaccination Mandate requiring employees to take weekly COVID-19 tests. Plaintiff was warned through his manager that if he did not sign, he would be placed on unpaid leave indefinitely as of early January 2022.

39. On or around December 7, 2021, ironically the same date as when the U.S. District Court for the Southern District of Georgia enjoined the federal government from enforcing E.O. 14042's COVID-19 vaccination mandate for federal government contractors and subcontractors on a nationwide basis, Defendant announced that a surcharge of $500 would be imposed on the non-

vaccinated employees' medical plan for the 2022, and that the termination process against the non-vaccinated employees would commence on January 5, 2022.

40. On or around December 15, 2022, Defendant's Human Resources department sent an e-mail to employees that they would be proceeding with the Vaccine Mandate, despite legal objections.

41. On or around December 17, 2021, Defendant's employees received an e-mail from Human Resources stating that if they did not comply with the testing requirement, they would be placed on an unpaid leave of absence, up to and including termination.

42. On or around December 28, 2021, Defendant sent communication via USPS to Plaintiff advising that he did not upload proof of vaccination. This letter states that Plaintiff is subject to Executive Order 14042, which requires that all employees at all U.S. sites that perform work on federal contracts, either directly or in a support role, be fully vaccinated. As stated above, Plaintiff does not perform work on federal contracts, neither directly nor in a support role.

43. On or around December 30, 2021, Plaintiff sent emails to his management, Arthur Woolverton ("Woolverton"), and to human resources, Kurt Justice ("Justice"), stating his role had no involvement on the federal side of

Defendant's business structure. Plaintiff received no response from Defendant's HR.

44. On or around January 4, 2022, Plaintiff forwarded the same emails from December 30, 2021, requesting additional information. Mr. Justice finally responded that a member from human resources would follow up with him but does not answer Plaintiff's questions.

45. On or around January 7, 2022, Plaintiff scheduled a call with Woolverton and Ashley Charles ("Charles") from Human Resources, where they informed him that due to Executive Order 14042, Plaintiff was to be immediately placed on unpaid leave.

46. On or around February 7, 2022, Ms. Charles contacted Plaintiff to advise him that Defendant would be reinstating his position, one month after being placed on a meritless three-week unpaid leave. Plaintiff inquired about retrospective backpay but received no answers.

47. On February 18, 2022, Plaintiff received an email from the conversation on February 7, 2022, with a DocuSign dated February 9, 2022, entitled "For Tennessee Employees Only – Covid-19 Vaccine Exemption." The first line referenced an exemption to its Covid-19 Vaccine Mandate, but Plaintiff never applied for an exemption as he was not subject to the mandates as a remote, non-federal employee. Title 14 of Tennessee legislation explicitly protects

non-federal employees from adverse action for failure to upload proof of vaccination.

### *Harassment and Hostile Work Environment Allegations*

48. Plaintiff was harassed and placed in a hostile work environment through Defendant's "Vaccine Mandate" and mandatory disclosure of vaccination status.

49. Defendant's management created a discriminatory environment as a result of the "Vaccine Mandate" that impacted Plaintiff's ability to work.

50. Defendant broadcasted Plaintiff's private information on internal memorandums, bulletin boards, other communications, and badge lanyards designed to both visibly and physically segregate the unvaccinated from the vaccinated.

51. Plaintiff was not allowed to be in the same rooms as those who were vaccinated, and if they were required to be in the same room, they were required to wear facemasks covering both nose and mouth—creating an isolating barrier between Plaintiff and his vaccinated co-workers.

52. Plaintiff was excluded from a Honeywell conference in Atlanta, GA; however, was allowed to go to dinner with the same people (all co-workers), with no mask, on that same day.

53. Plaintiff was sent almost daily e-mails threatening termination if he did not comply with the COVID-19 "vaccine" mandate.

54. On at least one occasion, at a different job sight, Defendant Honeywell brought in medical staff to administer the COVID-19 vaccine and stated that if the nonvaccinated were not vaccinated by approximately noon, that they would all be terminated. Some employees were coerced by Defendant Honeywell into receiving the "vaccine." At approximately 1:30 PM that same day, Defendant Honeywell stated that it was pushing the deadline for the vaccination out a couple of weeks.

55. At a different job sight, unvaccinated employees were segregated and isolated from their vaccinated co-workers. For example, at this location, unvaccinated employees were made to use port-a-potties outside and were made to eat lunch outside, with no AC and/or heat.

56. Plaintiff was ultimately put in a position to choose between his livelihood and his beliefs by mandating that Plaintiff comply with the "vaccine" mandate and the mandate to disclose his vaccination status or be placed on unpaid leave from his position, creating an intimidating and unhealthy environment within the workplace.

57. Plaintiff was ultimately put on administrative unpaid leave as a result of his non-vaccinated status.

# CAUSES OF ACTION

## COUNT I
## United States Constitution Amendment 1
*Violation of Plaintiff's First Amendment Right to the Free Exercise of Religion*

58. Plaintiff realleges and incorporates all paragraphs above as if fully set forth herein.

59. The First Amendment's Free Exercise Clause prohibits laws that impose special disabilities on the basis of one's religious status.

60. At all times relevant, Plaintiff has held sincere religious beliefs rendering him unable to receive the COVID-19 "vaccine," making a religious exemption appropriate.

61. Plaintiff filed requests for reasonable religious accommodations from the COVID-19 "vaccine" mandate, based on his sincerely held religious beliefs.

62. Despite Plaintiff's religious beliefs being the basis for not receiving the COVID-19 "vaccine," Defendant is still, in effect, mandating that Plaintiff receive the "vaccine," or risk losing his employment. Thus, Plaintiff is being effectively forced to choose between his religious beliefs, or his employment.

## COUNT II
## Title VII, 42 USC § 2000e, et seq. ("Title VII")
*Religious Discrimination – Failure to Accommodate*

63. Plaintiff realleges and incorporates all paragraphs above as if fully set forth herein.

64. This action is brought pursuant to Title VII of the Civil Rights Act, as amended, 42 USC § 2000e, et seq. ("Title VII").

65. At all times relevant, Defendant has been a corporation continuously doing business throughout the country engaged in an industry affecting commerce within the meaning of Title VII and has at least fifteen (15) employees.

66. Plaintiff has a sincere, religious belief that precludes him from taking a COVID-19 "vaccine."

67. Plaintiff filed requests for reasonable accommodations from the COVID-19 "vaccine" mandate based on his sincerely held religious beliefs.

68. Defendant refused to engage in an interactive process regarding the Plaintiff's requests for reasonable accommodations to the COVID-19 "vaccine" mandate.

69. The allegations described above represent only a fraction of the instances of failures to accommodate Plaintiff's sincerely held religious beliefs by Defendant directed at Plaintiff.

70. Defendant, at all times relevant thereto, had actual and constructive knowledge of the conduct described in the paragraphs outlined above.

71. As a result of the failures to accommodate actions perpetrated by Defendant and maintained by Defendant's failure to protect Plaintiff from further discrimination and harassment, Plaintiff suffered emotional distress.

72. Defendant violated Title VII by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act of its employees and management as described in the paragraphs outlined above.

73. Defendant failed to comply with its statutory duty to take all reasonable and necessary steps to reasonable accommodate Plaintiff's sincerely held religious beliefs and to eliminate discrimination from the workplace and to prevent it from occurring in the future.

74. Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendant has engaged in other discriminatory and harassing practices against him which are not yet fully known. Plaintiff will seek leave of this Court to amend this Complaint in that regard.

75. As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered and will continue to suffer pain and suffering, mental anguish, and emotional distress and Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

76. Plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of Defendant described above was done with oppression

and malice, with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff. Plaintiff is further informed and believes that Defendant, through its officers, managing agents, and/or its supervisors, authorized, condoned, and/or ratified the unlawful conduct of its employees and managers.

77. As a further direct and proximate result of Defendant's violation of Title VII, as heretofore described, Plaintiff has been compelled to retain the services of legal counsel in an effort to enforce the terms and conditions of his employment relationship with Defendant, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to the Plaintiff, whom therefore, will seek leave of this Court to amend this Complaint in that regard when the same shall be fully and finally ascertained. Plaintiff's request that attorneys' fees and costs be awarded pursuant to Title VII and applicable State law.

78. Plaintiff demands trial by jury on all issues so triable.

WHEREFORE, Plaintiff prays this Court award judgment in his favor against Defendant Honeywell for compensatory damages including back pay, front pay (or reinstatement), punitive damages, and damages for emotional distress, pain and suffering, and mental anguish, pre- and post-judgment interest, costs, and such other relief as this Court deems proper.

## COUNT III
## Civil Rights Act, as amended, 42 USC § 2000e, et seq. ("Title VII")
### *Religious Discrimination and Harassment*

79. Plaintiff realleges and incorporates all paragraphs above as if fully set forth herein.

80. This action is brought pursuant to Title VII of the Civil Rights Act, as amended, 42 USC § 2000e, et seq. ("Title VII").

81. At all times relevant, Defendant has been a corporation continuously doing business throughout the country engaged in an industry affecting commerce within the meaning of Title VII and has at least fifteen (15) employees.

82. Plaintiff has sincere, religious beliefs that preclude him from taking a COVID-19 "vaccine."

83. Plaintiff was discriminated against because of his sincerely held religious beliefs.

84. Plaintiff was harassed because of his sincerely held religious beliefs.

85. Plaintiff was segregated and visibly marked because of his sincerely held religious beliefs.

86. The allegations described above represent only a fraction of the inappropriate, discriminatory treatment and conduct by Defendant directed at Plaintiff.

87. Defendant, at all times relevant thereto, had actual and constructive knowledge of the conduct described above.

88. As a result of the discriminatory actions perpetrated by Defendant and maintained by Defendant's failure to protect Plaintiff from further discrimination and harassment, Plaintiff suffered emotional distress.

89. Defendant violated Title VII by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act of its employees and management as described above.

90. Defendant failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate discrimination from the workplace and to prevent it from occurring in the future.

91. Plaintiff is informed and believe, and based thereon alleges, that in addition to the practices enumerated above, Defendant has engaged in other discriminatory and harassing practices against him which are not yet fully known. Plaintiff will seek leave of this Court to amend this Complaint in that regard.

92. As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination against Plaintiff, Plaintiff has suffered pain and suffering, mental anguish, and emotional distress and Plaintiff has suffered and a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

93. Plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of Defendant described above was done with oppression and malice, with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff. Plaintiff is further informed and believes that Defendant, through its officers, managing agents, and/or its supervisors, authorized, condoned, and/or ratified the unlawful conduct of its employees and managers.

94. As a further direct and proximate result of Defendant's violation of Title VII, as heretofore described, Plaintiff has been compelled to retain the services of legal counsel in an effort to enforce the terms and conditions of his employment relationship with Defendant, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to the Plaintiff, who therefore, will seek leave of this Court to amend this Complaint in that regard when the same shall be fully and finally ascertained. Plaintiff requests that attorneys' fees and costs be awarded pursuant to Title VII and applicable State law.

95. Plaintiff demands trial by jury on all issues so triable.

WHEREFORE, Plaintiff prays this Court award judgment in his favor against Defendant Honeywell for compensatory damages including back pay, front pay (or reinstatement), punitive damages, and damages for emotional distress, pain and

suffering, and mental anguish, pre- and post-judgment interest, costs, and such other relief as this Court deems proper.

## COUNT IV
## Civil Rights Act, as amended, 42 USC § 2000e, et seq. ("Title VII")
*Religious Discrimination – Retaliation*

96. Plaintiff realleges and incorporates all paragraphs above as if fully set forth herein.

97. This action is brought pursuant to Title VII of the Civil Rights Act, as amended, 42 USC § 2000e, et seq. ("Title VII").

98. At all times relevant, Defendant has been a corporation continuously doing business throughout the country engaged in an industry affecting commerce within the meaning of Title VII and has at least fifteen (15) employees.

99. Plaintiff has sincere, religious beliefs that precludes him from taking a COVID-19 "vaccine."

100.    Due to his religious beliefs, Plaintiff was mandated to comply with an extensive list of "mandatory accommodations" including, but not limited to wearing discriminatory color badges to denote "clean" versus "unclean" (vaccinated versus unvaccinated), wearing PPE, and social distancing in an unsuccessful attempt to keep his employment.

101.    Furthermore, Plaintiff was threatened with daily e-mails threatening termination if he did not comply with the COVID-19 "vaccine" mandate,

despite his explicitly documented religious beliefs preventing him from receiving the "vaccine".

102.    Despite Plaintiff's sincerely held religious beliefs that preclude him from taking a COVID-19 "vaccine," Defendant has effectively mandated that Plaintiff must take a COVID-19 "vaccine" or be placed on unpaid leave from his position, rather than proposing adequate accommodations.

103.    Plaintiff complained of this disparate treatment to Defendant's HR and Upper Management.

104.    In retaliation for complaining of said disparate treatment, Plaintiff was treated worse in terms and conditions than his vaccinated co-workers, was put on unpaid leave, was further harassed, and put under a microscope, and/or was ostracized daily for his choice to not receive the COVID-19 "vaccine."

105.    The allegations described above represent only a fraction of the inappropriate, retaliatory treatment and conduct by Defendant directed at Plaintiff.

106.    Defendant, at all times relevant thereto, had actual and constructive knowledge of the conduct described above.

107.    As a result of the discriminatory actions perpetrated by Defendant and maintained by Defendant's failure to protect Plaintiff from further retaliation, Plaintiff suffered emotional distress.

108. Defendant violated Title VII by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act of its employees and management as described above.

109. Defendant failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate retaliation from the workplace and to prevent it from occurring in the future.

110. Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendant has engaged in other retaliatory practices against him which are not yet fully known. Plaintiff will seek leave of this Court to amend this Complaint in that regard.

111. As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has suffered and will continue to suffer pain and suffering, mental anguish, and emotional distress and Plaintiff has suffered and will continue to suffer a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

112. Plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of Defendant described above was done with oppression and malice, with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff. Plaintiff is further informed

and believes that Defendant, through its officers, managing agents, and/or its supervisors, authorized, condoned, and/or ratified the unlawful conduct of its employees and managers.

113.    As a further direct and proximate result of Defendant's violation of Title VII, as heretofore described, Plaintiff has been compelled to retain the services of legal counsel in an effort to enforce the terms and conditions of his employment relationship with Defendant, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to the Plaintiff, whom therefore, will seek leave of this Court to amend this Complaint in that regard when the same shall be fully and finally ascertained. Plaintiff requests that attorneys' fees and costs be awarded pursuant to Title VII and applicable State law.

114.    Plaintiff demands trial by jury on all issues so triable.

WHEREFORE, Plaintiff prays this Court award judgment in his favor against Defendant Honeywell for compensatory damages including back pay, front pay (or reinstatement), punitive damages, and damages for emotional distress, pain and suffering, and mental anguish, pre- and post-judgment interest, costs, and such other relief as this Court deems proper.

### COUNT V
### Americans with Disabilities Act, as amended, 42 USC § 12101 ("ADAAA")
*Perceived Disability Discrimination and Harassment*

115.     Plaintiff realleges and incorporates all paragraphs above as if fully set forth herein.

116.     This action is brought pursuant to the Americans with Disabilities Act, as amended ("ADAAA").

117.     At all times relevant, Defendant has been a corporation continuously doing business throughout the country engaged in an industry affecting commerce within the meaning of the ADAAA and has at least fifteen (15) employees.

118.     Plaintiff was subjected to disability discrimination and harassment during his time of employment by Defendant due to Plaintiff's perceived disability as being susceptible to catching COVID-19 due to his non-vaccinated status.

119.     Furthermore, Plaintiff received harassing e-mails near-daily, threatening unpaid leave and/or termination if Plaintiff chose to remain unvaccinated, was required to wear PPE when vaccinated employees were not, forced to social distance and sit in separate rooms and sometimes even use separate restrooms than his vaccinated co-workers, undergo weekly COVID-19 testing, and was not given new or desirable projects to work on.

120. The allegations described above represent only a fraction of the inappropriate, discriminatory, and harassing treatment and conduct by Defendant directed at Plaintiff.

121. Defendant, at all times relevant thereto, had actual and constructive knowledge of the conduct described above.

122. As a result of the discriminatory actions perpetrated by Defendant and maintained by Defendant's failure to protect Plaintiff from further discrimination and harassment, Plaintiff suffered emotional distress.

123. Defendant violated the ADAAA by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act of its employees and management as described above.

124. Defendant failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate discrimination and harassment from the workplace and to prevent it from occurring in the future.

125. Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendant has engaged in other discriminatory and harassing practices against him which are not yet fully known. Plaintiff will seek leave of this Court to amend this Complaint in that regard.

126.     As a direct and proximate result of Defendant's willful, knowing, and intentional discrimination and harassment against Plaintiff, Plaintiff has suffered and will continue to suffer pain and suffering, mental anguish, and emotional distress and Plaintiff has suffered a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

127.     Plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of Defendant described above was done with oppression and malice, with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff. Plaintiff is further informed and believes that Defendant, through its officers, managing agents, and/or its supervisors, authorized, condoned, and/or ratified the unlawful conduct of its employees and managers.

128.     As a further direct and proximate result of Defendant's violation of the ADAAA, as heretofore described, Plaintiff has been compelled to retain the services of legal counsel in an effort to enforce the terms and conditions of his employment relationship with Defendant, and has thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to Plaintiff, who therefore, will seek leave of this Court to amend this Complaint in that regard when the same shall be fully and finally

ascertained. Plaintiff requests that attorneys' fees and costs be awarded pursuant to the ADAAA and applicable State/Federal law.

129.     Plaintiff demands trial by jury on all issues so triable.

WHEREFORE, Plaintiff prays this Court award judgment in his favor against Defendant Honeywell for compensatory damages including back pay, front pay (or reinstatement), punitive damages, and damages for emotional distress, pain and suffering, and mental anguish, pre- and post-judgment interest, costs, and such other relief as this Court deems proper.

## COUNT VI
## Americans with Disabilities Act, as amended, 42 USC § 12101 ("ADAAA")
### *Perceived Disability Discrimination – Retaliation*

130.     Plaintiff realleges and incorporates all paragraphs above as if fully set forth herein.

131.     This action is brought pursuant to the Americans with Disabilities Act, as amended ("ADAAA").

132.     At all times relevant, Defendant has been a corporation continuously doing business throughout the country engaged in an industry affecting commerce within the meaning of the ADAAA and has at least fifteen (15) employees.

133.    Defendant perceived Plaintiff as having a disability due to his non-vaccinated status and his alleged increased susceptibility to contracting COVID-19—a notion that has proven grossly incorrect.

134.    As a result of Plaintiff's perceived disability due to his non-vaccinated status, Defendant enacted rules and regulations that applied only to those with this perceived disability.

135.    Plaintiff was ostracized and treated as inferior to his co-workers, solely due to his non-vaccinated status. Plaintiff was placed on unpaid administrative leave due to his perceived disability.

136.    Plaintiff complained of this disparate treatment based on perceived disability to Defendant's HR and Upper Management.

137.    In retaliation for complaining of said disparate treatment, Plaintiff was treated worse in terms and conditions than his vaccinated co-workers, was put on unpaid leave, was further harassed and put under a microscope, and/or was ostracized daily for his choice to not receive the COVID-19 "vaccine."

138.    The allegations described above represent only a fraction of the inappropriate, retaliatory treatment and conduct by Defendant directed at Plaintiff.

139.    Defendant, at all times relevant thereto, had actual and constructive knowledge of the conduct described above.

140.     As a result of the discriminatory actions perpetrated by Defendant and maintained by Defendant's failure to protect Plaintiff from further retaliation, Plaintiff suffered emotional distress.

141.     Defendant violated the ADAAA by failing to adequately supervise, control, discipline, and/or otherwise penalize the conduct, acts, and failures to act of its employees and management as described above.

142.     Defendant failed to comply with its statutory duty to take all reasonable and necessary steps to eliminate retaliation from the workplace and to prevent it from occurring in the future.

143.     Plaintiff is informed and believes, and based thereon alleges, that in addition to the practices enumerated above, Defendant has engaged in other retaliatory practices against him which are not yet fully known. Plaintiff will seek leave of this Court to amend this Complaint in that regard.

144.     As a direct and proximate result of Defendant's willful, knowing, and intentional retaliation against Plaintiff, Plaintiff has suffered and will continue to suffer pain and suffering, mental anguish, and emotional distress and Plaintiff has suffered a loss of earnings and other employment benefits and job opportunities. Plaintiff is thereby entitled to general and compensatory damages in amounts to be proven at trial.

145.    Plaintiff is informed and believes, and based thereon alleges, that the outrageous conduct of Defendant described above was done with oppression and malice, with a conscious disregard for Plaintiff's rights and with the intent, design, and purpose of injuring Plaintiff. Plaintiff is further informed and believes that Defendant, through its officers, managing agents, and/or its supervisors, authorized, condoned, and/or ratified the unlawful conduct of its employees and managers.

146.    As a further direct and proximate result of Defendant's violation of the ADAAA, as heretofore described, Plaintiff has been compelled to retain the services of legal counsel in an effort to enforce the terms and conditions of his employment relationship with Defendant, and have thereby incurred, and will continue to incur, legal fees and costs, the full nature and extent of which are presently unknown to the Plaintiff, whom therefore, will seek leave of this Court to amend this Complaint in that regard when the same shall be fully and finally ascertained. Plaintiff requests that attorneys' fees and costs be awarded pursuant to the ADAAA and applicable State/Federal law.

147.    Plaintiff demands trial by jury on all issues so triable.

WHEREFORE, Plaintiff prays this Court award judgment in his favor against Defendant Honeywell for compensatory damages including back pay, front pay (or reinstatement), punitive damages, and damages for emotional distress, pain and

suffering, and mental anguish, pre- and post-judgment interest, costs, and such other relief as this Court deems proper.

## COUNT VII
### 42 USC § 2000ff-1(a)(1), 1(a)(2), and 1(b)
*Genetic Information Non-Discrimination Act ("GINA")*

148.    Plaintiff realleges and incorporates all paragraphs above as if fully set forth herein.

149.    This action is brought pursuant to the Genetic Information Non-Discrimination Act, 42 USC § 2000ff-1(a)(1), 1(a)(2), and 1(b) (hereinafter "GINA").

150.    GINA also makes it unlawful for an employer to request, require, or purchase genetic information with respect to an employee or a family member of the employee.

151.    Polymerase Chain Reaction ("PCR") tests are used to amplify small segments of DNA which is genetic material. This is the same sort of test used for forensics, cloning, genome projects for mapping genes, and NDA sequencing. Genetic test means a test that analyzes DNA, RNA, or chromosomes for purposes of such as the prediction of disease or vertical transmission risks, or monitoring, diagnosis, or prognosis.

152.    For genetic tests, the first step is extraction of genetic material from a human specimen either through blood, hair, or oral swab. This is the exact

same process used in the PCR test required by Defendant to detect the genetic material of COVID-19.

153.    Defendant has violated and continues to violate GINA when requesting and requiring the genetic information from Plaintiff by mandating he take the PCR test. Defendant violates GINA by requesting and requiring Plaintiff to have his genetic information collected via nasopharyngeal or nasal swab (the swab scrapes the cells from inside the nasal cavity which has the genetic material from the person for whom the specimen is collected).

154.    Defendant violates GINA when it requests Plaintiff's vaccination status by asking Plaintiff about his vaccination status as they are asking for his genetic information given the vaccines are gene therapist in violation of GINA.

155.    Defendant limits, segregates, discriminates, and classifies Plaintiff in a way that adversely affects his opportunities or status.

156.    Defendant has engaged in these practices with malice and indifference to Plaintiff's rights.

157.    Defendant's discrimination has harmed and will continue to harm Plaintiff.

**COUNT VIII**
**42 USC § 1983**
*Violation of Right to Privacy, Denial of Equal Protection and Due Process*

158.    Plaintiff realleges and incorporates all paragraphs above as if fully set forth herein

159.    This action is brought pursuant to 42 USC § 1983.

160.    Under 42 USC § 1983, it is unlawful for any person to, under color of any statute, ordinance, regulation, custom, or usage of any State or Territory or the District of Columbia, subject or cause to subject, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws. 42 USC § 1983 protects the Rights to Privacy, Equal Protection, and Due Process of citizens of the United States as well as any other person within the jurisdiction.

161.    Defendant effectively enacted a COVID-19 "vaccine" mandate through its Policies and Procedures required to be adhered to by all employees within its company if they wished to remain employed by Defendant.

162.    Due to religious beliefs, Plaintiff could not adhere to Defendant's COVID-19 "vaccine" mandate, resulting in Defendant violating Plaintiff's rights to privacy with its alternatives to receiving the "vaccine."

163.    The Policies and Procedures mandated by Defendant required Plaintiff to wear PPE when all vaccinated employees were no longer required to do so, and undergo weekly COVID-19 testing, solely due to his non-vaccinated

status. Defendant's requirements due to Plaintiff's non-vaccination status are a blatant violation of Plaintiff's right to privacy—both medically and religiously.

164. The Policies and Procedures enacted by Defendant result in Plaintiff being treated unequally and discriminatorily, due to his vaccination status. Vaccinated employees are not subject to the discrimination and harassment that Plaintiff and other non-vaccinated employees endure within the workplace.

165. Furthermore, by placing Plaintiff on mandatory unpaid administrative leave and mandating "reasonable accommodations" without an interactive process when it involved religious or medical exemptions, Defendant has violated Plaintiff's right to Due Process.

166. Plaintiff was not given an ample opportunity to participate in the exemption process regarding his vaccination status prior to his mandatory unpaid administrative leave. Rather, Plaintiff was harassed at the workplace due to his religious beliefs until ultimately being placed on unpaid administrative leave.

167. Defendant continues to violate Plaintiff's right to privacy in a way that adversely affects his employment status with Defendant and ultimately denies Plaintiff his Due Process and Equal Protection rights within the workplace.

168. Defendant's violations of privacy have harmed Plaintiff as he was denied his rightful employment due to his sincere religious beliefs.

169. Defendant is acting under color of law as it has conspired to leverage Plaintiff's Constitutional rights against him in an effort to achieve the Biden Administration's goal of achieving universal vaccination and to acquire Plaintiff's personal, genetic information.

170. The Supreme Court has recognized a right to personal privacy or a guarantee of certain areas or zones of privacy in the penumbra of the Bill of Rights, including the First, Fourth, Fifth, and Ninth Amendments, and in the concept of liberty guaranteed by the first section of the Fourteenth Amendment. The applicable cases hold that personal rights can be deemed fundamental or implicit in the concept of ordered liberty and included in this is the guarantee of personal privacy.

171. Applied here, Plaintiff's fundamental right to privacy includes the reasonable expectation to not be coerced or put under duress by Defendant to inject an unwanted, experimental, foreign gene therapy into his body to save his livelihood.

172. This privacy right also includes Plaintiff's individual freedom to choose what information he wants to share or disclose that is personal in nature; and the right to control the extent to which his medical information is shared and

released. As a means of coercion, Defendant violates Plaintiff's privacy rights when they broadcast his private information on internal memorandums, bulletin, boards, and other communications designed for this exact purpose; to segregate the unvaccinated from the vaccinated.

173.    Defendant knowingly and willfully discriminated against those who are not vaccinated and treated persons who are vaccinated different from those who are not without unlawful justification.

174.    Allowing similarly situated co-workers who are vaccinated to retain jobs, be paid more, have greater privileges/schedules, not be required to wear masks, etc. is a facial deprivation of equal protection.

175.    Plaintiff has a fundamental liberty interest and right to bodily integrity and informed consent. This notion of bodily integrity has been embodied in the requirement that informed consent is generally required for medical treatment.

176.    Here, Defendant's actions are those of a State Actor who lacks a compelling interest to impede or infringe upon Plaintiff's fundamental rights and fails under any level of scrutiny. Plaintiff has Constitutional and fundamental liberty interests in bodily integrity and informed consent; and a Constitutional and fundamental liberty interest in not being compelled to provide private medical information to Defendant.

177.    Defendant's vaccine mandates do not serve a legitimate, compelling state interest. While courts have found a compelling state interest in controlling the spread of infection from person-to-person in some instances, this is inapplicable here since these "vaccines"/gene therapies and masks do not prevent Plaintiff, or other citizens, from dying, being infected, or transmitting COVID-19 to another person.

178.    As a direct and proximate result of Defendant's policies, practices, regulations, and conduct, Plaintiff has suffered harm.

179.    The conduct of Defendant as described herein represents a willful and conscious disregard for the treatment of private citizens under the law as to their right to privacy; and their actions shock the conscience of the average person and constitute an abuse of power that is malicious and purposeful.

## COUNT IX
### Breach of Contract

180.    Plaintiff realleges and incorporates all paragraphs above as if fully set forth herein.

181.    Upon the start of his employment with Defendant, Plaintiff was issued a Code of Business Conduct, outlining Defendant's purported commitment to integrity and ethics. The Code creates a contractual obligation for Plaintiff and Defendant for expectations, standards of practice, and principles of conduct within the workplace.

182.   Plaintiff reasonably relied on the Code as the terms of his employment, as a failure to comply with the Code carries hefty consequences including disciplinary action, including termination. Defendant's actions against Plaintiff have violated, and continue to violate, several sections of its own Code of Business Conduct (hereinafter the "Code"), including the sections entitled "Honeywell Will not Tolerate Retaliation," "Protecting Personal Data," "Providing a Healthy and Safe Workplace," "Protecting the Environment," and "Respecting Human Rights."

183.   Through the Code, Defendant creates a contractual obligation between itself and its employees to uphold Defendant's standards of integrity and compliance. The Code applies to all employees, officers, and directors, including Plaintiff. Under the Code, Defendant prohibits retaliation within the workplace. Through the Code, Defendant not only encourages its employees to report any misconduct but explicitly creates a responsibility to do so.

184.   For not adhering to the "Vaccine Mandate," Plaintiff was undeniably retaliated against. Plaintiff was ostracized and treated as inferior to his vaccinated co-workers, solely due to his non-vaccinated status.

185.   Pursuant to the Code, Plaintiff complained of this disparate treatment based on perceived disability to Defendant's HR and Upper Management.

186. In retaliation for complaining of said disparate treatment, Plaintiff was treated worse in terms and conditions than his vaccinated co-workers, was put on unpaid leave, was further harassed, and put under a microscope, and/or was ostracized daily for his choice to not receive the COVID-19 "vaccine."

187. The allegations described above represent only a fraction of the inappropriate, retaliatory treatment and conduct by Defendant directed at Plaintiff, in clear violation of Defendant's own Code.

188. Under the Code, Defendant promises an inclusive, safe, and respectful working environment for all employees, regardless of gender, race, color, ethnic background, age, religious belief, national origin, affectional or sexual orientation, gender identity, disability, marital status, veteran status, citizenship or impending citizenship or any other characteristic protected by law.

189. Here, however, Plaintiff was not afforded an inclusive, safe, and respectful working environment as a result of his religious beliefs preventing him from receiving the COVID-19 "vaccine."

190. Plaintiff was not allowed to be in the same rooms as those who were vaccinated, and if he was required to be in the same room, he was required to wear facemasks covering both his nose and mouth—creating an isolating barrier between Plaintiff and his vaccinated co-workers.

191.     Plaintiff was threatened with daily e-mails threatening termination if he did not comply with the COVID-19 "vaccine" mandate, despite his explicitly documented religious beliefs preventing him from receiving the "vaccine".

192.     Defendant allowed, and seemingly encouraged, Plaintiff to be harassed and disrespected within the workplace in an effort to coerce him to offend his religious beliefs and receive the COVID-19 "vaccine."

193.     Under the Code, Defendant promises to protect employees' personal data and that personal data will only be collected, accessed, or used for appropriate business purposes.

194.     Here, Plaintiff's personal data was not protected. Rather, it was broadcasted throughout the workplace in the form of different colored badges indicating whether an employee was "clean" (vaccinated) or "not-clean" (not-vaccinated).

195.     This privacy right includes Plaintiff's individual freedom to choose what information they want to share or disclose that is personal in nature; and the right to control the extent to which his medical information is shared and released. As a means of coercion, Defendant violates Plaintiff's privacy rights when they broadcast his private information on internal memorandums, bulletin, boards, other communications, and badge lanyards designed for this exact purpose; to segregate the unvaccinated from the vaccinated.

196.    Under the Code, Defendant promises to provide a healthy and safe workplace.

197.    Here, Plaintiff was not safe within the workplace. The Policies and Procedures mandated by Defendant were intended to harass Plaintiff in an effort to coerce Plaintiff to receive the COVID-19 "vaccine." These Policies and Procedures required Plaintiff to wear PPE when all vaccinated employees were no longer required to do so, and undergo weekly COVID-19 testing, solely due to his non-vaccinated status.

198.    The Policies and Procedures enacted by Defendant result in Plaintiff being treated unequally and discriminatorily, solely due to his vaccination status. Vaccinated employees are not subject to the discrimination and harassment that Plaintiff and other non-vaccinated employees endure within the workplace. The Policies and Procedures ultimately created a hostile and toxic workplace for the Plaintiff.

199.    The Policies and Procedures mandated by Defendant were intended to harass Plaintiff until he received the COVID-19 "vaccine." These Policies and Procedures required Plaintiff to wear PPE when all vaccinated employees were no longer required to do so, and undergo weekly COVID-19 testing despite having no symptoms, solely due to his non-vaccinated status.

200.    Further, in retaliation for complaining of said disparate treatment, Plaintiff was treated worse in terms and conditions than his vaccinated co-workers, was put on unpaid leave, was further harassed, and put under a microscope, and/or was ostracized daily for his choice to not receive the COVID-19 "vaccine."

201.    Under the Code, Defendant promises to respect human rights and that it respects, and values diversity reflected in various backgrounds, experiences, and ideas.

202.    Plaintiff has sincere, religious beliefs that preclude him from taking a COVID-19 "vaccine."

203.    Plaintiff was discriminated against because of his sincerely held religious beliefs.

204.    Plaintiff was harassed because of his sincerely held religious beliefs.

205.    Plaintiff was segregated and visibly marked because of his sincerely held religious beliefs.

206.    The allegations described above represent only a fraction of the inappropriate, discriminatory treatment and conduct by Defendant directed at Plaintiff due to his differing beliefs.

207.    Defendant failed to respect Plaintiff's human rights, in direct violation with its Code and other policies. Due to his religious beliefs, Plaintiff was

harassed, and Defendant displayed its utter lack of respect for diversity within the workplace.

208.     Plaintiff has and continues to adhere to his contractual obligations through the Code, while Defendant shows a disregard for the Code as well as the well-being of Plaintiff.

## COUNT X
### *Fraud*

209.     Plaintiff realleges and incorporates all paragraphs above as if fully set forth herein.

210.     Defendant made (or participated in or approved the making of) numerous false statements to Plaintiff as set forth above, including regarding the efficacy of COVID-19 vaccines and the fact that Defendant would offer reasonable accommodations for those with religious or medical objections to taking COVID-19 vaccines.

211.     Plaintiff reasonably relied on those false statements.

212.     As a direct and proximate result of these false statements, Plaintiff has suffered harm.

213.     Defendant acted willfully and with malicious intent in making these false statements.

## COUNT XI
### *Intentional Infliction of Emotional Distress*

214. Plaintiff realleges and fully incorporates all paragraphs above as if fully set forth herein.

215. Defendant acted intentionally and/or recklessly with respect to the conduct set forth in this Complaint.

216. Defendant's conduct requiring Plaintiff to comply with a long list of "mandatory accommodations" has been and continues to be extreme and outrageous.

217. As a proximate result of Defendant's actions, Plaintiff has suffered severe emotional distress.

218. The harm caused by Defendant to Plaintiff was reasonably foreseeable.

## PRAYER FOR RELIEF

Plaintiff demands judgment against Defendant as follows:

i. An award of compensatory damages in appropriate amounts to be established at trial;

ii. Punitive damages at the maximum permitted by law as determined by the jury;

iii. Preliminary and permanent injunctive relief enjoining Defendant from any further COVID-19 related mandates or restrictions on Plaintiff or any prospective future employees;

iv. An award of attorneys' fees and costs associated with this action;

v.      An award of prejudgment and post-judgment interest at the legal rate to the maximum extent permitted by law; and

vi.      Such other and further relief as this Court may deem just and proper.

## JURY DEMAND

Plaintiff demands a trial by jury on all issues so triable.

Dated: July 26, 2022                    */s/ Kathryn C. Hopkinson*
                                        **Kathryn C. Hopkinson, Esq.**

## <u>CERTIFICATE OF SERVICE</u>

I HEREBY CERTIFY that a true and correct copy of the foregoing has been electronically filed on this 26th day of July, 2022. I further certify that a true and accurate copy of the complaint will be served on the Defendant via process server.

*/s/ Kathryn C. Hopkinson*
**Kathryn C. Hopkinson, Esq.**
Florida Bar No.: 0102666
khopkinson@curranantonelli.com
**Peter Antonelli, Esq.**
Massachusetts Bar No.:
pantonelli@curranantonelli.com
**Sarah Bethany Levy, Esq.**
Texas Bar No.: 24128460
slevy@curranantonelli.com
Secondary Emails:
ethompson@curranantonelli.com
filings@curranantonelli.com

CURRAN ANTONELLI, LLP

400 North Tampa St, 15th Floor

Tampa, Florida 33602
(617) 207-8670 ▪ (617) 850-9001 Fax

*Counselors for the Plaintiff, Michael Norris*