MICHAEL PATRICK NORRIS,
ROBERT REID, *et al.*,

      Plaintiffs,

v.                                 Case No: 8:22-cv-1675-CEH-TGW
                                 *Consolidated with* 8:22-cv-2210-CEH-MRM

HONEYWELL INTERNATIONAL,
INC. and HONEYWELL FEDERAL
MANUFACTURING &
TECHNOLOGIES, LLC,

      Defendants.

_____

## <u>ORDER</u>

This matter comes before the Court on Defendant Honeywell International, Inc.'s ("Honeywell") Motion to Dismiss in Case No. 8:22-cv-1675 (Doc. 33), and the Motion to Dismiss of Defendants Honeywell and Honeywell Federal Manufacturing & Technologies, LLC ("FM&T") in Case No. 8:22-cv-2210 (Doc. 32).

In these consolidated putative class actions, named Plaintiffs Michael Patrick Norris and Robert Reid, *et al.*, are current or former employees of one or both Defendants who challenge the COVID-19 vaccine mandate and related policies that Defendants implemented in 2021 and 2022. Plaintiffs argue that Defendants' actions constitute discrimination and retaliation under the Americans with Disabilities Act ("ADA") for a perceived disability, and discrimination and retaliation under Title VI of the Civil Rights Act of 1964 based on their religious beliefs. In 8:22cv1675, Norris

sues Honeywell alone on behalf of himself and others who are similarly situated. Doc. 30.  In 8:22cv2210, Reid and 59 other named Plaintiffs sue both Defendants, also on behalf of themselves and others who are similarly situated. Doc. 14.

Defendants now move to dismiss both complaints.  In both cases, they argue that Plaintiffs have failed to state a claim for any of the four causes of action.  Doc. 33 at 3-12;  Doc. 32 at 13-22.[1]  They also assert that the class allegations in both cases should be dismissed because class certification is not appropriate. *Id.* at 22-26; Doc. 33 at 12-17.  With respect to 8:22-cv-2210 only, Defendants also argue: that the Amended Complaint is a shotgun pleading because it fails to differentiate between Defendants; that venue is improper for many of the named Plaintiffs, over whose claims the Court also lacks personal jurisdiction; and that Plaintiffs have inadequately pleaded that Defendants were their employer. Doc. 32 at 7-13.  Plaintiffs oppose both motions to dismiss, Docs. 41, 42, and Defendants have also filed replies. Docs. 51, 52; *see also* Docs. 63, 64.

Upon review and consideration, and being fully advised in the premises, the Court will grant-in-part and deny-in-part the motions.  Specifically, the Court will dismiss Counts III and IV of the Amended Complaint and Second Amended Complaint with prejudice.  It will dismiss Count II without prejudice.  With respect to Case Number 8:22-cv-2210 only, it will dismiss all non-Florida Plaintiffs' claims,

---

[1] All citations to the parties' filings refer to the pagination of the ECF document itself, rather than the parties' labeled pagination.

many Plaintiffs' Count I claims, and the remaining Plaintiffs' claims against Honeywell, without prejudice.

## I. <u>Background[2]</u>

On July 26, 2022, Plaintiff Michael Norris filed suit against Honeywell, his employer, alleging a variety of causes of action related to Honeywell's COVID-19 vaccine mandate. Doc. 1. Explaining that he objected to receiving a vaccine because of his sincerely held religious beliefs, Norris alleges that Honeywell announced that all employees were required to receive the vaccine in May of 2021. *Id.* For the remainder of 2021, Honeywell implemented various incentive programs and began treating unvaccinated employees differently from vaccinated employees. *Id.* Unvaccinated employees were notified that they would be terminated if they were not vaccinated by January 2022. *Id.* Although exemptions were ostensibly available, unvaccinated employees were required to sign forms agreeing to take weekly COVID-19 tests. *Id.* Norris alleges he was placed on a three-week unpaid leave and subjected to discriminatory and harassing treatment. *Id.* Norris later filed a Second Amended Complaint that alleges claims on behalf of himself and all other similarly situated individuals. Doc. 30.

---

[2] When ruling on a motion to dismiss under Fed. R. Civ. P. 12(b)(6), the Court derives the statement of facts from the factual allegations of the pleadings, which the Court must accept as true in ruling on the motion. *Erickson v. Pardus*, 551 U.S. 89, 94 (2007). With limited exceptions, the Court cannot look outside the pleadings in ruling on a Rule 12(b)(6) motion. *See* Fed. R. Civ. P. 12(d).

A group of 60 additional current or former employees of Honeywell and its subsidiary, FM&T, led by named Plaintiff Robert Reid ("the Reid Plaintiffs"), initiated a second suit against Defendants on September 23, 2022, on behalf of themselves and all similarly situated individuals. *See* Dkt. No. 8:22-cv-2210-CEH-MRM, Doc. 1. The Reid Plaintiffs allege similar factual grounds as Norris. *Id.* On February 22, 2023, the Court granted Plaintiffs' unopposed motion to consolidate the two actions into Docket Number 8:22-cv-1675-CEH-TGW. *See* Dkt. No. 8:22-cv-2210-CEH-MRM, Docs. 25, 29.

In both putative class actions, Plaintiffs allege that Defendants discriminated and retaliated against them in violation of the Americans with Disabilities Act ("ADA") and Title VII of the Civil Rights Act of 1964. *See* Dkt. No. 8:22-cv-2210-CEH-MRM, Doc. 14; Dkt. No. 8:22-cv-1675-CEH-TGW, Doc. 30.[3] Norris' and the Reid Plaintiffs' allegations regarding the four counts are identical to each other, although the individual Plaintiffs' underlying factual allegations differ.

Defendants now move to dismiss both complaints on a variety of grounds. Docs. 32, 33. They argue that both complaints fail to state a claim for all four causes of action, and they move to strike the class allegations. *Id.* With respect to the Reid Plaintiffs only, Defendants also argue that the Amended Complaint is a shotgun pleading, that venue and personal jurisdiction are improper as to the Plaintiffs who do

---

[3] The docket numbers cited in the remainder of this Order refer to the lead case, Dkt. No. 8:22-cv-1675-CEH-TGW, except for the Reid Plaintiffs' operative pleading, the Amended Complaint, in Dkt. No. 8:22-cv-2210-CEH-MRM, Doc. 14 ("Doc. 14.").

not live or work in Florida, and that Plaintiffs have not adequately pleaded their employment by either Defendant. Doc. 32. Each argument will be addressed in turn.

## II. <u>Shotgun Pleading</u> *(8:22-cv-2210 only)*

Defendants first contend that the Reid Plaintiffs' Amended Complaint must be dismissed because it is an impermissible shotgun pleading. Doc. 32 at 7-9. Complaints that violate either Rule 8(a)(2) or Rule 10(b) of the Federal Rules of Civil Procedure are often referred to as "shotgun pleadings." *Weiland v. Palm Beach Cnty. Sheriff's Office*, 792 F.3d 1313, 1320 (11th Cir. 2015). "The unifying characteristic of all types of shotgun pleadings is that they fail to one degree or another, and in one way or another, to give the defendants adequate notice of the claims against them and the grounds upon which each claim rests." *Id.* at 1323; *see Lampkin-Asam v. Volusia Cnty. Sch. Bd.*, 261 F. App'x 274, 277 (11th Cir. 2008) ("A complaint that fails to articulate claims with sufficient clarity to allow the defendant to frame a responsive pleading constitutes a 'shotgun pleading.'").

The Eleventh Circuit has identified four general types of shotgun pleadings:

> (1) "a complaint containing multiple counts where each count adopts the allegations of all preceding counts, causing each successive count to carry all that came before and the last count to be a combination of the entire complaint"; (2) "a complaint ... replete with conclusory, vague, and immaterial facts not obviously connected to any particular cause of action"; (3) a complaint "that commits the sin of not separating into a different count each cause of action or claim for relief"; and (4) a complaint that "assert[s] multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against."

*Burke v. Custom Marine Grp.*, 847 F. App'x 578, 580–81 (11th Cir. 2021), citing *Weiland*, 792 F.3d at 1321-23.

Defendants contend that the Amended Complaint is a shotgun pleading because it does not state which claims each Plaintiff asserts against which Defendant. Doc. 32 at 9. Specifically, some named Plaintiffs' individual allegations do not support each cause of action, yet all Plaintiffs are included in each count. *Id.* Further, Defendants argue that the Amended Complaint inadequately pleads that both Defendants were each Plaintiffs' employer, yet asserts all counts against both Defendants. *Id.*

In response, Plaintiffs point out that Defendants' substantive motion to dismiss demonstrates its ability to understand the claims asserted against it, which is the true test for whether a complaint is a shotgun pleading. Doc. 42 at 2, 4. Further, Plaintiffs argue that the Amended Complaint adequately alleges the role of each Defendant and their relationship to each other. *Id.* Doc. 4. Defendants reply to argue that Plaintiffs still failed to identify any factual allegations indicating which Defendant employed which Plaintiff or the precise basis for their claims against each one. Doc. 51 at 2.

First, the Amended Complaint is not a shotgun pleading because, according to Defendants, some Plaintiffs have not stated a claim for relief for the counts in which they are included. To the extent an individual named Plaintiff has not plausibly alleged sufficient facts to state a claim, this question will be addressed with respect to Defendants' motion pursuant to Rule 12(b)(6). But a deficient complaint is not necessarily a shotgun pleading. The Amended Complaint provides adequate notice to

Defendants of the underlying factual allegations of each individual Plaintiff, as well as which causes of action each Plaintiff intends to assert. Whether the former supports the latter is a separate question that will be determined in Section IV of this Order.

Defendants' argument that the employer allegations are inadequate is similarly reserved for a Rule 12(b)(6) analysis. However, their related assertion that the Amended Complaint fails to make clear which conduct is attributed to which Defendant does fall within the purview of a shotgun pleading review.

The fourth type of shotgun pleading asserts multiple claims against multiple defendants without specifying which of the defendants are responsible for which acts or omissions, or which of the defendants the claim is brought against. *Weiland*, 792 F.3d at 1323. This type of shotgun pleading makes it "virtually impossible" to determine which factual allegations the plaintiff intends to use against each defendant. *Worldspan Marine Inc. v. Comerica Bank*, No. 20-11646, 2021 WL 5882006, *2 (11th Cir. Dec. 13, 2021); *see also Embree v. Wyndham Worldwide Corp.*, 779 F. App'x 658, 663-64 (11th Cir. 2019) (upholding district court order that found "it is completely unclear which of the factual allegations set forth in the forty-page complaint pertain to which of Plaintiff's claims or to which Defendant," requiring defendants to "sort[] through each factual allegation in the [Complaint] in a futile attempt to discern what allegations are alleged against them.").

Importantly, a complaint is not a shotgun pleading merely because it asserts a claim against multiple defendants. "The fact that defendants are accused collectively does not render the complaint deficient." *Kyle K. v. Chapman*, 208 F.3d 940, 944 (11th

Cir. 2000). The problem arises when doing so fails to provide defendants with adequate notice of the claims against them. *Cont'l 332 Fund, LLC v. Albertelli*, 317 F. Supp. 3d 1124, 1139-40 (M.D. Fla. 2018), citing *Weiland*, 792 F.3d at 1323. Therefore, a complaint must allege the acts or omissions attributed to each defendant or it will be found to violate the pleading rules. *See id.* (declining to dismiss complaint that alleged the existence and purpose of a scheme between multiple defendants along with the individual actions each defendant perpetrated). *See, e.g.*, *State Farm Mut. Auto. Ins. Co. v. Lewin*, 535 F. Supp. 3d 1247, 1257 (M.D. Fla. 2021) (Covington, J.) (complaint contained sufficient allegations as to each defendant to place them on notice of the allegations against them); *Shallenburg v. PNC Bank, N.A.*, No. 8:18-CV-2225-CEH-TGW, 2020 WL 555447, *6 (M.D. Fla. Feb. 4, 2020) (Honeywell, J.) (complaint's factual allegations sufficiently described the activities undertaken by each defendant); *FFC Mortg. Corp. v. Red Door Title Ins. Agency, Inc.*, No. 13-61132-civ-SCOLA, 2013 WL 12138556, *3 (S.D. Fla. Dec. 12, 2013) ("The Court therefore finds that FFC has not simply lumped the Defendants together but has provided the specific acts attributable to [each Defendant] to give sufficient notice of the allegations of fraud against them.").

On the other hand, "nothing in the pleading rules prohibits lodging the same claim against multiple Defendants if they are all alleged to have participated in the same acts rising to the claim." *Whitehurst v. G & A Rest. Mgmt., Inc.*, No. 2:20-CV-67-MRM, 2020 WL 2062462, *2 (M.D. Fla. Apr. 29, 2020) (rejecting defendant's shotgun pleading argument where it was possible each defendant could have engaged in all the acts plaintiff alleged to have violated the Fair Labor Standards Act), citing *Crowe v.*

*Coleman*, 113 F.3d 1536, 1539 (11th Cir. 1997) ("When multiple defendants are named in a complaint, the allegations can be and usually are to be read in such a way that each defendant is having the allegation made about him individually."); *cf. Durham v. Seacrest Country Day Sch.*, No. 2:22-CV-732-SPC-KCD, 2023 WL 1796426, *3 (M.D. Fla. Feb. 7, 2023) (dismissing complaint as a shotgun pleading because it failed to specify which defendant the claims were brought against, where it was not likely that all claims could have been brought against all defendants).

Here, the Reid Plaintiffs assert all four claims against both Defendants. Doc. 14 ¶¶ 137-171. The underlying factual allegations do not "provide specific acts attributable to" each Defendant. *See FFC Mortg.*, 2013 WL 12138556 at *3. Rather, nearly every allegation in the Amended Complaint uses the collective term "Defendants" when describing an action. *See*, *e.g.*, Doc. 14 ¶ 21 ("On August 11, 2021, Defendants' Arizona office sent an email to all employees that…").[4] As a result, the Amended Complaint will be found to be a shotgun pleading unless it is possible that both Defendants could have engaged in the same conduct. *See Whitehurst*, 2020 WL 2062462 at *2.

Defendants are two different corporate entities, but Plaintiffs allege that FM&T is a subsidiary of Honeywell, that there is a "joint employment relationship" between them with respect to Plaintiffs, and that "Honeywell provides direction and controls the employment practices [of] its subsidiaries" and their employees with respect to the

---

[4] The only allegations that deviate from this pattern are paragraphs 31 and 33, which refer to statements made by specific Honeywell executives.

policies at issue in this action. Doc. 14 ¶¶ 113, 114, 116. Complaints that attribute the same actions to multiple defendants whom it alleges operate jointly have been found to provide fair notice to defendants for shotgun pleading purposes. *See, e.g., Hughes-Payne v. Argon Medical Devices, Inc.*, No. 3:22-cv-1944, 2020 WL 19408078, *2 (N.D. Fla. July 29, 2022) (complaint was not a shotgun pleading where it alleged that the two defendants "acted collectively and were 'joint venturers' with a 'unity of interest in ownership.'"); *Marino v. Spizzigo Enterprises, LLC*, No. 10-24391-CIV, 2021 WL 8894429, *7 (S.D. Fla. Feb. 3, 2021) (same, where complaint alleged that two defendants were "owned and/or controlled, directly or indirectly" by the third defendant, and that they were "each, individually, and together as a group, a 'person' and 'employer'" within the relevant statutory definitions; pointing out that "there are no specific allegations in the Complaint that would appear to apply to fewer than all three Defendants."). Here, too, Plaintiffs' allegations adequately convey a theory of collective liability for the purpose of providing Defendants with notice. As noted, the Court makes no finding as to whether the allegations are adequate for the purpose of stating a claim against Honeywell, which will be addressed *infra*.

Finally, the Court observes that Plaintiffs' allegation that they were all employed by "Defendants," Doc. 14 ¶¶ 1, 49, 50, *et seq.*, could be interpreted in multiple ways: either that both Defendants employed them at once, or that one or the other Defendant employed them. Based on the allegation that FM&T is a subsidiary of Honeywell, the plainest reading is that all Reid Plaintiffs were directly employed by FM&T, and that they are alleging they were indirectly employed by Honeywell as a

result. *See id.* ¶¶ 111-117. Thus, they allege that all actions were taken jointly by both Defendants. To the extent that Plaintiffs intended to convey that some of them were employed by FM&T and others were employed directly by Honeywell or another of its subsidiaries, Plaintiffs must amend their pleading in order to provide adequate notice of each named Plaintiff's alleged employment and each Defendant's specific actions.

Because the plainest reading of the Amended Complaint provides both Defendants with adequate notice of the claims against them, the Court finds that it is not a shotgun pleading. Defendants' motion to dismiss on this basis is due to be denied.

## III. <u>Venue and Personal Jurisdiction</u> *(8:22-cv-2210 only)*

Defendants next make two related arguments with respect to the 44 Reid Plaintiffs who do not live or work in Florida: that venue is not proper in the Middle District of Florida as to those Plaintiffs, and that the Court lacks personal jurisdiction over Defendants as to their claims. Doc. 32 at 9-11.

### A. Legal Standard

A defendant may move to dismiss for improper venue under Federal Rule of Civil Procedure 12(b)(3), and for lack of personal jurisdiction under Rule 12(b)(2). When a defendant moves to dismiss for improper venue, the plaintiff bears the burden of showing that the venue selected is proper. *See Delong Equip. Co. v. Wash. Mills Abrasive Co.*, 840 F.2d 843, 845 (11th Cir. 1988) (explaining that the plaintiff must make

"only a *prima facie* showing of venue"). With respect to jurisdiction, a court must dismiss an action against a defendant over which it lacks personal jurisdiction. *Smith v. Trans–Siberian Orchestra*, 689 F.Supp.2d 1310, 1312 (M.D. Fla. 2010), citing *Posner v. Essex Ins. Co.*, 178 F.3d 1209, 1214 n. 6 (11th Cir. 1999). To withstand a motion to dismiss, a plaintiff must plead sufficient facts to establish a prima facie case of jurisdiction over the non-resident defendant. *See id.* at 1313; *Virgin Health Corp. v. Virgin Enters. Ltd.*, 393 F. App'x 623, 625 (11th Cir. 2010). The district court must accept the facts alleged in the complaint as true, to the extent they are uncontroverted by the defendant's affidavits or evidence. *Consol. Dev. Corp. v. Sherritt, Inc.*, 216 F.3d 1286, 1291 (11th Cir. 2000).

### B. Venue

The Reid Plaintiffs allege that venue is proper in the Middle District of Florida because 16 of them live in Florida and worked in this judicial district. Doc. 42 at 6 n.3; Doc. 14 ¶ 11. With respect to the remaining 44 named Plaintiffs, they allege that "at least some of the unlawful employment practice is alleged to have been committed in this district." *Id.* Plaintiffs conclude that venue is proper under 42 U.S.C. § 2000e-5(f)(3). *Id.*

42 U.S.C. § 2000e-5(f)(3) governs venue for Title VII actions. *See Pinson v. Rumsfeld*, 192 F. App'x 811, 817 (11th Cir. 2006) ("The venue provisions of § 2000e-5(f)(3) were intended to be the exclusive venue provisions for Title VII employment discrimination actions and that the more general provisions of [28 U.S.C.] § 1391 are

not controlling in such cases.") (citations omitted).  Under this provision, a Title VII action may be brought:

> (1) "in any judicial district in the State in which the unlawful employment practice is alleged to have been committed"; (2) "in the judicial district in which the employment records relevant to such practice are maintained and administered"; or (3) "in the judicial district in which the aggrieved person would have worked but for the unlawful employment practice."

42 U.S.C. § 2000-e(5)(f)(3).  However, "if the respondent is not found within any such district, such an action may be brought within the judicial district in which the respondent has his principal office."

Defendants argue that Plaintiffs have failed to establish that the Middle District of Florida is the proper venue for the non-Florida Plaintiffs, because they fail to identify which, if any, unlawful employment practices occurred here with respect to their claims, and they also fail to allege that any employment records are maintained here or that the non-Florida Plaintiffs would have worked here. Doc. 32 at 11. Defendants contend that each Named Plaintiff is required to satisfy Title VII's venue provision, even in a putative class action. *Id.* at 10.

In response, Plaintiffs stand by their allegation that "at least some of the unlawful employment practices occurred in this district," apparently arguing that it is sufficient to establish venue for the non-Florida Plaintiffs. Doc. 42 at 6.  In the alternative, however, they ask the Court to transfer the action, pursuant to 28 U.S.C. § 1404(a), to the Western District of North Carolina, which is the site of Honeywell's national headquarters. *Id.* at 8-9.  They contend that "the bulk of Defendants' non-

party witnesses will likely be located" there, "including and especially those individuals responsible for making many of the employment law decisions at issue in this lawsuit," thereby rendering it the "locus of operative facts." *Id.* at 9.  Defendants reply to argue that Plaintiffs have not established the lawsuit "could have been brought" in the Western District of North Carolina under the Title VII venue statute, as required for a transfer under 28 U.S.C. § 1406(a). Doc. 51 at 3-4.

As a threshold matter, Plaintiffs do not appear to challenge Defendants' contention that each named Plaintiff is required to satisfy the Title VII venue statute. Although the Eleventh Circuit has not addressed the issue, many district courts around the country have reached the conclusion for which Defendants advocate. *See, e.g.*, *Bland v. Edward D. Jones & Co., L.P.*, No. 18-cv-03673, 2020 WL 7027595, *5 (N.D. Ill. Nov. 30, 2020) (collecting cases).  This Court agrees with those cases' reasoning, and finds that the claims of each named Plaintiff must comply with Title VII's venue requirements.[5]

Plaintiffs have not adequately alleged that the Middle District of Florida is the proper venue for the non-Florida Plaintiffs' Title VII claims.  Their vague allegation that "at least some of the unlawful employment practices occurred in this district" is insufficient absent other factual allegations that identify what those practices were and allege that they related to each Plaintiffs' claim.  As currently drafted, the non-Florida Plaintiffs have not satisfied 42 U.S.C. § 2000-e(5)(f)(3).

---

[5] In addition, as will be discussed in Section IV, *infra*, the only claims that survive this Order are brought under Title VII.

Further, they have not established that the Western District of North Carolina is a district in which the Title VII action could have been brought, such that transfer there would be permissible under 28 U.S.C. §§ 1404(a) and 1406(a). Plaintiffs' focus on the location of Honeywell's headquarters is irrelevant absent an indication that "respondent is not found within any…district" that complies with § 2000-e(5)(f)(3)'s first three options. As with a Florida venue, however, their allegations do not reveal whether any of those options—that the unlawful employment practices occurred there, the relevant employment records are located there, or Plaintiffs would have worked there but for the unlawful practices—can be satisfied as to every named Plaintiff in the Western District of North Carolina. Accordingly, the Court cannot transfer the action to the Western District of North Carolina based on the current pleading.

In *Bland*, facing a similar problem where venue was not proper as to some of the named plaintiffs, the court allowed the plaintiffs to choose between the possible remedies: severing the claims of the plaintiffs for whom venue was improper and transferring them to the correct venue, transferring the entire case to a venue where it would be proper, or deferring the decision until after class certification. 2020 WL 7027595 at *7-8. The court in *Amochaev v. Citigroup Glob. Markets Inc.*, No. C-05-1298, 2007 WL 484778, *1 (N.D. Cal. Feb. 12, 2007), instead found that its options were to dismiss the action in its entirety, sever and dismiss the improperly venued plaintiffs' claims, or transfer the action to a district where venue was proper as to all named plaintiffs. Here, the current allegations do not make clear that there is any district where venue would be proper as to all named Plaintiffs, nor do they reveal the proper

venue for the non-Florida Plaintiffs. Transfer is therefore not an option. Given that venue is proper for 16 named Plaintiffs, however, the Court declines to dismiss the entire action. Further, faced with such inadequate allegations of venue, the Court finds that it would not serve the interests of judicial economy to wait to address venue until the class certification stage. Therefore, it is left with the option of severing and dismissing the non-Florida Plaintiffs' claims.

Although the non-Florida Plaintiffs' claims will be severed and dismissed,[6] the dismissal will be without prejudice. To the extent Plaintiffs wish to continue pursuing the individual claims of all named Plaintiffs, they may file a Second Amended Complaint that establishes the propriety of venue in the Middle District of Florida as to every named Plaintiff under 42 U.S.C. § 2000-e(5)(f)(3). In the alternative, they may file a Second Amended Complaint that contains sufficient allegations to allow transfer of all Plaintiffs' claims to another district, and subsequently file a motion to transfer. Or, Plaintiffs may choose to dismiss this action in its entirety and re-file it in a district in which they believe venue is proper as to all Plaintiffs.

---

[6] The non-Florida Plaintiffs are: Doc. 14 ¶ 56 (Akers), ¶ 57 (Loudenbeck), ¶ 58 (Brooke Booth), ¶ 59 (Steve Booth), ¶ 60 (Martinez), ¶ 61 (Brown), ¶ 62 (Meintel), ¶ 63 (Kezele), ¶ 64 (Evans), ¶ 65 (Godley), ¶ 66 (Pixler), ¶ 67 (Richardson), ¶ 68 (Sanchez), ¶ 69 (Tira), ¶ 70 (Oman), ¶ 71 (Wilder), ¶ 72 (Villines), ¶ 73 (Saunders), ¶ 74 (Maldonado), ¶ 75 (Tuttle), ¶ 76 (Childress), ¶ 77 (Moes), ¶ 78 (Roden), ¶ 79 (Sorenson), ¶ 81 (Veenstra), ¶ 87 (Smerekanich), ¶ 88 (Keri Mason), ¶ 92 (Burchard), ¶ 93 (Saunders), ¶ 94 (Haines), ¶ 95 (Netotea), ¶ 96 (Geis), ¶ 97 (Grant), ¶ 98 (Meyer), ¶ 99 (McDuffee), ¶ 100 (Schow), ¶ 101 (Craven), ¶ 103 (Hartman), ¶ 104 (Doe), ¶ 105 (Ashford), ¶ 106 (Mannino), ¶ 108 (Reed), ¶ 109 (Cumpton), ¶ 110 (Cundiff).

## C. Personal Jurisdiction

Defendants also argue, in a footnote, that the Court lacks personal jurisdiction over them with respect to the non-Florida Plaintiffs' claims, because those Plaintiffs do not allege that their claims arise from Defendants' Florida contacts. Doc. 32 at 11 n.11. In addition, they assert that the Court lacks general jurisdiction over Defendants because they are neither incorporated in Florida nor maintain their principal place of business there. *Id.*

Plaintiffs respond that Defendants have at least minimum contacts in Florida, and that Florida's long-arm statute applies because Defendants engaged in unlawful acts regarding the vaccine mandate within the state of Florida and caused harm to Plaintiffs in Florida through acts outside of it. Doc. 42 at 7. Further, Defendants have not provided any extrinsic evidence. *Id.* at 7-8. Defendants reply to argue that conclusory allegations regarding unspecified acts in Florida are insufficient, and they were not required to provide extrinsic evidence in a facial challenge to personal jurisdiction. Doc. 51 at 3 n.3.

The determination of personal jurisdiction over a nonresident defendant requires a two-part analysis. First, a court must consider whether the state's long-arm statute permits the exercise of jurisdiction. *See Madara v. Hall*, 916 F.2d 1510, 1514 (11th Cir. 1990) (citations omitted). Second, it must determine whether the Due Process Clause of the Fourteenth Amendment is satisfied. *Id.*; *see Bristol-Myers Squibb Co. v. Superior Ct. of Ca., San Francisco Cnty.*, 582 U.S. 255, 261 (2017) (citations omitted). A court may satisfy the Fourteenth Amendment to gain personal jurisdiction

over a nonresident defendant via either "general jurisdiction" or "specific jurisdiction." *Id.* at 262.

"A court with general jurisdiction may hear *any* claim against that defendant, even if all the incidents underlying the claim occurred in a different state." *Id.* (emphasis in original) (citations omitted). "[O]nly a limited set of affiliations with a forum will render a defendant amenable to [general] jurisdiction there." *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014). A corporation will be subject to general jurisdiction in states with which "its affiliations are so continuous and systematic as to render it essentially at home in the forum state." *Id.* at 139 (quotations omitted). While general jurisdiction is not limited to the "paradigm" examples of a corporation's principle place of business and place of incorporation, the *Daimler* court cautioned that being "at home" is far from synonymous with "doing business in." *Id.* at 139 n.20. Rather than focusing solely on the magnitude of the defendant's in-state contacts, "[g]eneral jurisdiction calls for an appraisal of a corporation's activities in their entirety, nationwide and worldwide." *Id.* (quotation omitted).

In contrast, for a court to exercise specific jurisdiction, the lawsuit "must arise out of or relate to the defendant's contacts with the forum." *Bristol-Myers Squibb*, 582 U.S. at 262 (quotation omitted). Specific jurisdiction "is confined to adjudication of issues deriving from, or connected with, the very controversy that establishes jurisdiction." *Id.* (quotation omitted). In other words, "there must be an affiliation between the forum and the underlying controversy, principally an activity or an

occurrence that takes place in the forum state," irrespective of the extent of the defendant's unconnected activities there. *Id.* at 264 (quotation omitted).

Where the court does not hold an evidentiary hearing regarding personal jurisdiction, the plaintiff must establish a prima facie case of jurisdiction over a non-resident defendant. *Madara*, 916 F.2d at 1514. The defendant may then submit affidavits to the contrary, at which time the burden shifts back to the plaintiff to produce evidence supporting jurisdiction. *Meier ex rel. Meier v. Sun Int'l Hotels, Ltd.*, 288 F.3d 1264, 1269 (11th Cir. 2002).

Here, the Court need not hold an evidentiary hearing and will instead determine whether the non-Florida Plaintiffs have established a prima facie case of personal jurisdiction over Defendants. The Court will also assume, *arguendo*, that Florida's long-arm statute is satisfied and will consider only whether there is a constitutional basis for personal jurisdiction.

The only allegations that connect Defendants' actions with respect to the vaccine mandate or any other subject of this action with the forum state are that certain Plaintiffs reside in Florida. However, the Court agrees with Defendants that it must assess whether it can maintain personal jurisdiction over Defendants as to all named Plaintiffs' claims. *See Garrett-Alfred v. Facebook, Inc.*, 540 F.Supp.3d 1129, 1135 (M.D. Fla. 2021) (Mizelle, J.); *Story v. Heartland Payment Systems, LLC*, 461 F.Supp.3d 1216, 1229 (M.D. Fla. 2020); *Connor v. Permanent General Assurance Corp.*, No. 9:20-cv-81979, 2021 WL 6135155, *2-3 (S.D. Fla. Nov. 18, 2021); *Tenet Solutions, LLC v. Amberstone Enterprises LLC*, No. 21-80649-CIV, 2021 WL 4991299, *6 (S.D. Fla. July 16, 2021).

As to the non-Florida Plaintiffs, the pleadings contain no allegations whatsoever that relate to Florida. Contrary to Plaintiffs' conclusory assertion in their response in opposition, no allegations specify any unlawful acts by either Defendant or any executives that occurred in Florida. As a result, Plaintiffs have not demonstrated that the non-Florida Plaintiffs' claims arise out of or relate to Defendants' contacts with Florida. *See Bristol-Myers Squibb*, 582 U.S. at 265 ("The relevant plaintiffs are not California residents and do not claim to have suffered harm in that State. In addition…all the conduct giving rise to the nonresidents' claims occurred elsewhere. It follows that the California courts cannot claim specific jurisdiction.").

Nor do the pleadings establish that either Defendant's Florida contacts are so continuous and systematic as to render it essentially at home there, to a similar extent as their place of incorporation or principal place of business does. *See Daimler*, 571 U.S. at 139. Plaintiffs allege that "Defendants" operate a facility in Pinellas and Manatee Counties, without specifying whether the facilities are operated by Honeywell, FM&T, or both. Doc. 14 ¶ 11. Even assuming that this allegation fairly applies to both Defendants, the operation of two facilities in Florida is not sufficient to demonstrate that they are at home there—particularly in the context of a global conglomerate like Honeywell. *See, e.g., Waite v. All Acquisition Corp.*, 901 F.3d 1307, 1318 (11th Cir. 2018) (no general jurisdiction where defendant built a plant in Florida and had a distributor there, where plaintiffs did not allege that its leadership was based there or that it otherwise directed its operations from there), *overruled on other grounds by Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S.Ct. 1017, 1026 (2021); *Millennium*

*Funding, Inc. v. 1701 Management LLC*, 576 F.Supp.3d 1192, 1205 (S.D. Fla. 2021) (defendant was not "at home" in Florida despite having an office in Miami).

Accordingly, neither general nor specific jurisdiction has been established with respect to the non-Florida Plaintiffs' claims. In other words, Plaintiffs have not established a prima facie case of personal jurisdiction over Defendants as to the non-Florida Plaintiffs' claims. The apparent lack of personal jurisdiction provides a second basis for dismissal of these claims without prejudice.

## IV.    Failure to State a Claim[7]

### A. Legal Standard

To survive a motion to dismiss under Rule 12(b)(6), a pleading must include a "short and plain statement of the claim showing that the pleader is entitled to relief." *Ashcroft v. Iqbal*, 556 U.S. 662, 677–78 (2009), quoting Fed. R. Civ. P. 8(a)(2). Labels, conclusions, and formulaic recitations of the elements of a cause of action are insufficient. *Id.* at 678, citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Mere naked assertions are also inadequate. *Id.* A complaint must contain sufficient factual matter, which, if accepted as true, would "state a claim to relief that is plausible on its face." *Id.*, quoting *Twombly*, 550 U.S. at 570. "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw a reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (internal citation

---

[7] Although the Court has dismissed without prejudice the claims of all non-Florida Reid Plaintiffs, it will address the sufficiency of all Plaintiffs' claims in this Order for the sake of judicial economy.

21

omitted). The Court is not bound to accept as true a legal conclusion stated as a "factual allegation" in the complaint. *Id.* Overall, the complaint must "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 93 (2007) (citations omitted).

## B. ADA Claims

### 1. ADA Discrimination (Count III)

In Count III, all Plaintiffs allege that Defendants discriminated against them under the Americans with Disabilities Act, 42 U.S.C. § 12101. Doc. 14 ¶¶ 155-161; Doc. 30 ¶¶ 89-95. Specifically, they allege that Defendants discriminated against and harassed them due to "Plaintiffs' perceived disability as being susceptible to COVID-19 due to their non-vaccinated statuses." *Id.* ¶ 92; Doc. 14 ¶ 158. Defendants argue that Count III fails to state a claim because, *inter alia*, Plaintiffs' identified "perceived disability" does not qualify as a physical or mental impairment. Doc. 32 at 16-17. In response, Plaintiffs assert that a "regarded as" ADA claim requires only allegations that Defendants perceived them to have a disability and perceived that disability to substantially impair a major life activity. Doc. 42 at 14-15.

The ADA prohibits employers from discriminating against qualified individuals on the basis of disability. 42 U.S.C. § 12112(a). To establish a prima facie case of ADA discrimination, the plaintiff must allege that he: (1) is disabled, (2) is a qualified individual, and (3) was discriminated against because of the disability. *Lewis v. City of Union City, Ga.*, 934 F.3d 1169, 1179 (11th Cir. 2019). The ADA defines a disability

as: (1) a physical or mental impairment that substantially limits one or more major life activities, (2) a record of such impairment, or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(1). Significantly, the Equal Employment Opportunity Commission's ("EEOC") interpretive guidance states that the definition of a physical or mental impairment does not include "characteristic predisposition to illness or disease." 29 C.F.R. Pt. 1630, App. § 1630.2(h).

The Eleventh Circuit has held that potential future impairments do not qualify as disabilities under the "regarded as" disability prong of the ADA. In *Equal Employment Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305, 1311 (11th Cir. 2019), the plaintiff brought an ADA discrimination claim under the theory that her employer regarded her as having a disability because it thought she was going to contract the Ebola virus while visiting Ghana. The Eleventh Circuit upheld the district court's dismissal with prejudice for failure to state a claim. *Id.* at 1318. The court first emphasized that ADA claims require an impairment to exist at the time of the adverse employment action; it found that the same limitation should also extend to perceived impairments. *Id.* at 1316. Similarly, it noted that an employer cannot fire or otherwise discriminate against an employee because of a perceived impairment unless it actually perceives that the employee has an impairment—not a potential future disability. *Id.* Finally, it cited the EEOC's interpretative guidance, observing that "if a predisposition to developing a disease in the future is not a physical impairment, by analogy, we do not see how [Plaintiff's] heightened risk of developing the disease Ebola in the future…constitutes a physical impairment either." *Id.* at 1317-18. The Eleventh

Circuit therefore held that, "for an employee to qualify as being 'regarded as' disabled, the employer must have perceived the employee as having a current existing impairment at the time of the alleged discrimination." *Id.* at 1318.

Other circuit courts have reached the same conclusion as the *STME* court. *See Shell v. Burlington N. Santa Fe Ry. Co.*, 941 F.3d 331, 337 (7th Cir. 2019) (reasoning that employer who regarded plaintiff as at high risk for developing certain medical conditions did not regard him as having a current impairment); *Morriss v. BNSF Ry. Co.*, 817 F.3d 1104, 1113 (8th Cir. 2016) ("The ADA does not prohibit discrimination based on a perception that a physical characteristic—as opposed to a physical impairment—may eventually lead to a physical impairment"); *see also Adair v. City of Muskogee*, 823 F.3d 1297, 1306 (10th Cir. 2016) (noting that the impairment must have been perceived at the time of termination).

Under this reasoning, district courts to confront the issue have found that the possibility that an individual might become infected with COVID-19 does not qualify as a disability under the ADA. *See Hice v. Mazzella Lifting Techs., Inc.*, 589 F. Supp. 3d 539, 550 (E.D. Va. 2022) (dismissing claim of "regarded as" disability discrimination based on age and susceptibility to COVID-19, due to inadequate factual allegations and a lack of authority "for the proposition that an employer's concern that an employee might get sick in the future could count as a perceived disability"); *Tucker v. Wells Fargo Bank*, No. 1:21-cv-735, 2023 WL 27112534, *4 (D.N.M. March 30, 2023) (plaintiff's alleged risk of future exposure to COVID-19 was not a disability under the ADA).

Likewise, unvaccinated individuals have not been successful in proceeding under a "regarded as" theory of disability. In *Gallo v. Wash. Nationals Baseball Club, LLC*, No. 22-cv-1092, 2023 WL 2455678, *3-4 (D.D.C. March 10, 2023), for example, the court found that an employer's concern that "as an unvaccinated person, Plaintiff might contract COVID-19 in the future and, at that time, endanger his health and the health of those around him" did not qualify as a "regarded as" disability; indeed, it "would mean that every unvaccinated person in the United States is now 'disabled' under the ADA." *See Sharikov v. Philips Medical Systems MR, Inc.*, No. 1:22-cv-326, 2023 WL 2390360, *8 (N.D.N.Y. March 7, 2023) (collecting cases, observing that "[c]ourts have dismissed claims that employees subject to COVID-19 vaccination policies were regarded as having an impairment"); *see also Jorgenson v. Conduent Transp. Sols., Inc.*, No. CV SAG-22-01648, 2023 WL 1472022, *4 (D. Md. Feb. 2, 2023) ("Not knowing a person's vaccination status is not the same as believing that person has a physical or mental impairment. That person, masked or unmasked, can perform all of his or her job duties[. The employer's policy] does not plausibly reflect a determination that any of its employees are disabled or impaired."); *Shkylar v. Carboline Co.*, No. 4:22-cv-391, 2022 WL 2867073 (E.D. Mo. July 21, 2022) (employer's policy of vaccination or mandatory masking that applied to all employees did not establish a "regarded as" disability).

In contrast, a plaintiff may proceed under a "regarded as" theory based on an employer's perception that she has actually contracted COVID-19. *See Guerrero v. Summit Aerospace, Inc.*, No. 21-CV-24006, 2022 WL 579499, *4 (S.D. Fla. Feb. 25,

2022) (plaintiff plausibly alleged a "regarded as" disability when he experienced adverse actions after informing employer that he had been exposed to COVID-19); *Booth v. GTE Fed. Credit Union*, No. 8:21-cv-1509, 2021 WL 5416690, *4-5 (M.D. Fla. Nov. 20, 2021) (Mizelle, J.) (plaintiff plausibly alleged employer regarded her as actually having contracted COVID-19).

Here, Plaintiffs allege that Defendants regarded them as having a disability because they were seen to be "susceptible to COVID-19 due to their non-vaccinated statuses." Doc. 14 ¶ 158. Plaintiffs' allegations amount to a theory that Defendants perceived them as having the potential to contract COVID-19—which is, at most, a future impairment rather than an existing one. They do not allege any actual perceived impairment that existed at the time of the alleged adverse actions. As in *STME*, they have failed to state a claim for ADA discrimination. 938 F.3d at 1318. And, as in *STME*, amendment of their allegations would be futile because their unvaccinated status is not a disability under the ADA. *Id.* at 1320. As a result, Count III of the Reid Plaintiffs' Amended Complaint and Count III of Norris's Second Amended Complaint are due to be dismissed with prejudice.

## 2. ADA Retaliation (Count IV)

In Count IV, Plaintiffs allege that Defendants retaliated against them under the ADA. Doc. 14 ¶¶ 162-171; Doc. 30 ¶¶ 96-105. Specifically, they allege that they were retaliated against for complaining to Defendants about the policies that applied to those with a perceived disability. *Id.* ¶¶ 168-169; Doc. 14 ¶¶ 102-103. The retaliation

took the form of harassment and/or ostracization, placement on unpaid leave, termination, or constructive discharge. *Id.*

Defendants argue that Count IV fails to state a claim for retaliation, on the ground that complaining about the vaccine policies was not a protected activity because Plaintiffs could not have had a good faith, objectively reasonable belief that Defendants were engaging in unlawful employment practices. Doc. 32 at 19-21. In addition, Defendants argue that Plaintiffs inadequately allege that their complaints were the cause of Defendants' retaliatory policies, which predated the complaints. *Id.* at 21. In response, Plaintiffs contend that their allegation that they were retaliated against for complaining about disparate treatment is adequate to plausibly allege all three elements of an ADA retaliation claim. Doc. 42 at 15-18. Defendants argue in reply that the allegation on which Plaintiffs rely is conclusory. Doc. 51 at 8.

Under the ADA, it is unlawful for an employer to "discriminate against any individual because such individual has opposed any act or practice made unlawful by [the ADA]." 42 U.S.C. § 12203(a). ADA retaliation claims are analyzed under the same legal framework as retaliation claims brought under Title VII of the Civil Rights Act of 1964. *Stewart v. Happy Herman's Cheshire Bridge, Inc.*, 117 F.3d 1278, 1287 (11th Cir. 1997). To state a viable claim for retaliation, a plaintiff must plausibly allege that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action. *Id.*

To establish that a plaintiff engaged in statutorily protected expression for the purpose of an ADA retaliation claim, a plaintiff must show that he "had a good faith, reasonable belief that the employer was engaged in unlawful employment practices." *Weeks v. Harden Mfg. Corp.*, 291 F.3d 1307, 1311-12 (11th Cir. 2002), citing *Little v. United Tech., Carrier Transicold Div.*, 103 F.3d 956, 960 (11th Cir. 1997) (Title VII retaliation).  Under this standard,

> [a] plaintiff must not only show that he *subjectively* (that is, in good faith) believed that his employer was engaged in unlawful employment practices, but also that his belief was *objectively* reasonable in light of the facts and record presented.  It thus is not enough for a plaintiff to allege that his belief in this regard was honest and bona fide; the allegations and record must also indicate that the belief, though perhaps mistaken, was objectively reasonable.

*Weeks*, 291 F.3d at 1312, citing *Little*, 103 F.3d at 960.

The Eleventh Circuit evaluates objective reasonableness based on binding precedent in the caselaw.  "Where binding precedent squarely holds that particular conduct is not an unlawful employment practice by the employer, and no decision of this Court or of the Supreme Court has called that precedent into question or undermined its reasoning, an employee's contrary belief that the practice is unlawful is unreasonable." *Butler v. Ala. Dep't of Transp.*, 536 F.3d 1209, 1214 (11th Cir. 2008). Nor is the plaintiffs' ignorance of the law relevant to the question of whether their belief was objectively reasonable. *Weeks*, 291 F.3d at 1317.  After all, "if the plaintiffs are free to disclaim knowledge of the substantive law, the reasonableness inquiry becomes no more than speculation regarding their subjective knowledge." *Id.*

In *Weeks*, for example, the court found that the plaintiffs could not have reasonably believed that a compulsory arbitration agreement was an unlawful employment practice at the time they opposed it, when Supreme Court and Eleventh Circuit caselaw from years earlier had established that such arbitration agreements were enforceable. 291 F.3d at 1313-1317. Accordingly, it dismissed the plaintiffs' ADA and Title VII retaliation claims. *Id.* at 1317; *see also Butler*, 536 F.3d at 1214 (opposition to coworkers' racist statement was not protected activity because binding caselaw established that the use of racially discriminatory language on one occasion by a coworker was not enough to create a racially hostile environment); *Harper v. Blockbuster Ent. Corp.*, 139 F.3d 1385, 1389 (11th Cir. 1998) (opposition to grooming policy was not objectively reasonable because of "existence of long-standing binding precedent holding that such a policy was not discriminatory").

Here, Plaintiffs allege that they opposed Defendants' practices with respect to their unvaccinated status, which they allege was a perceived disability. However, as the Court has already discussed, Plaintiffs' unvaccinated status did not constitute a perceived disability. *See* Section IV(C)(1), *supra*. Moreover, although binding caselaw specifically discussing COVID-19 vaccinations did not exist at the time of Plaintiff's opposing, the Eleventh Circuit had already held in *Equal Employment Opportunity Comm'n v. STME, LLC*, 938 F.3d 1305 (11th Cir. 2019), that potential future impairments do not qualify as perceived disabilities. As discussed, Plaintiffs' unvaccinated status—their perceived susceptibility to COVID-19—amounts to a potential future impairment rather than a current impairment. Consequently, the

Court finds that Plaintiffs' subjective belief that Defendants' vaccine policies violated the ADA was unreasonable, pursuant to binding caselaw, and their opposition to that policy was therefore not protected activity. Because Plaintiffs do not state a viable retaliation claim, Count IV must be dismissed. *See Colton v. Fehrer Automotive, N. Am., LLC*, No. 10-12039, 2021 WL 3073780, *3 (11th Cir. 2021) (affirming dismissal where plaintiff failed to allege facts suggesting that she opposed unlawful conduct). Further, for the same reason as Count III, dismissal with prejudice is warranted because any amendment would be futile.

## C. Title VII Claims

### 1. Title VII Discrimination (Count I)

In Count I, Plaintiffs allege that Defendants discriminated against them because of their religious beliefs in violation of Title VII, 42 U.S.C. § 2000e-2(a)(1). Doc. 14 ¶¶ 137-145; Doc. 30 ¶¶ 71-79. Specifically, they allege that their religious beliefs, of which they informed Defendants, precluded them from receiving the COVID-19 vaccine in compliance with Defendants' vaccine mandate. *Id.* ¶¶ 73, 75; Doc. 14 ¶¶ 139, 141. Defendants then failed to engage in an interactive process regarding Plaintiffs' requests for reasonable accommodations and failed to provide any reasonable accommodations. *Id.* ¶¶ 142-144; Doc. 30 ¶¶ 76-78.

Defendants argue that all Plaintiffs fail to state a claim for Title VII discrimination. Doc. 32 at 13-16; Doc. 33 at 5-7. First, they contend that not all Plaintiffs even plead that they requested a religious exemption to Defendants' mandate, thereby failing to allege that they informed Defendants of their religious

beliefs. Doc. 32 at 13. In addition, Plaintiffs do not allege that they were denied a religious exemption. *Id.* at 13-14. Defendants also argue that they provided reasonable accommodations in the form of requiring unvaccinated employees to comply with conditions like testing, unpaid leave, personal protective equipment, or social distancing. *Id.* at 14-15. Lastly, they argue that it is lawful and does not constitute discrimination to inquire into whether an asserted religious belief is sincere. *Id.* at 15-16.

Responding in opposition, Plaintiffs contend that they have plausibly alleged all three elements of a prima facie case of Title VII discrimination. Doc. 42 at 10-14; Doc. 41 at 6-10. Even the two Plaintiffs who did not expressly plead in their individual allegations that they had a religious objection fall under the general averment in the Count I allegations that Plaintiffs informed Defendants of their religious objection. Doc. 42 at 12. Plaintiffs further contend that their allegations in Count II are sufficient to establish the element of discipline resulting from their religious beliefs. *Id.* at 11-12. Finally, they argue that any purported accommodations offered by Defendants were unreasonable and not made in good faith. *Id.* at 13-14.

In reply, Defendants argue that the allegations on which Plaintiffs rely are conclusory or fail to fill the holes that Defendants pointed out. Doc. 51 at 5. They also contend that Plaintiffs' failure to allege that the offered accommodations conflicted with their religious beliefs is dispositive. *Id.* at 6; Doc. 52 at 2-3.

Title VII prohibits employers from discriminating against their employees because of religion. 42 U.S.C. § 2000e-2(a)(1). Specifically, an employee's religious

beliefs cannot be a "motivating factor" for an employment practice, even if other factors also motivated the practice. 42 U.S.C. § 2000e-2(m). "The term 'religion' in Title VII's prohibition against religious discrimination 'includes all aspects of religious observance and practice, unless an employer demonstrates that he is unable to reasonably accommodate an employee's…religious observation or practice without undue hardship on the conduct of the employer's business.'" *Bailey v. Metro Ambulance Services, Inc.*, 992 F.3d 1265, 1275 (11th Cir. 2021), quoting 42 U.S.C. § 2000e(j).

Title VII religious discrimination claims may proceed under various theories, including a "traditional" disparate treatment theory and a failure to accommodate theory. *See Bailey*, 992 F.3d at 1272. To establish a reasonable accommodation claim of religious discrimination,[8]

> a plaintiff must set forth a *prima facie* case by showing that: (1) his sincere and bona fide religious belief conflicted with an employment requirement, and (2) his employer took adverse employment action against him because of his inability to comply with the employment requirement or because of the employer's perceived need for his reasonable accommodation.

*Id.* at 1275. A plaintiff need not establish a prima facie case to survive a motion to dismiss, but the complaint's well-pleaded factual allegations must plausibly suggest

---

[8] Although the pleadings repeatedly allege that Defendants treated Plaintiffs differently from vaccinated employees, the specific allegations of Count I make clear that Plaintiffs are proceeding solely under the reasonable-accommodation theory of Title VII religious discrimination, rather than a traditional disparate treatment theory. Doc. 14 ¶¶ 142-144; Doc. 30 ¶¶ 76-78. Similarly, because the factual allegations' references to a hostile work environment are not reflected in the Count I allegations, the Court cannot consider a hostile work environment theory. Thus, the Court will analyze the sufficiency of the claims under a reasonable accommodation theory only.

that the plaintiff suffered an adverse employment action due to intentional discrimination. *Surtain v. Hamlin Terrace Foundation*, 789 F.3d 1239, 1246 (11th Cir. 2015); *Swierkiewicz v. Sorema N.A.*, 534 U.S. 506, 510 (2002); *but see, e.g.*, *Bowers v. Bd. of Regents of Univ. System of Ga.*, 509 F. App'x 906 (Table), 2013 WL 563180, 910-912 (11th Cir. 2013) (while noting that a prima facie case is not required at the motion to dismiss stage, considering the elements of a prima facie case in determining whether claim was plausible).

Here, Defendants do not dispute that Plaintiffs have plausibly alleged the first element: that their sincere religious beliefs conflicted with Defendants' vaccine mandate. They instead argue, first, that some Plaintiffs have not adequately pleaded that they informed Defendants of their religious beliefs. However, the Supreme Court held in *EEOC v. Abercrombie & Fitch Stores, Inc.*, 575 U.S. 768, 772 (2015), that a plaintiff need not show that an employer has "actual knowledge" of the employee's need for an accommodation, as long as he can show that the need for an accommodation "was a motivating factor in the employer's decision." *See Bailey*, 992 F.3d at 1275 n.4 (explaining that the elements of a prima facie case were modified after *Abercrombie*). Thus, Plaintiffs must plausibly allege that their need for a reasonable accommodation from the vaccine mandate, or Defendants' desire to avoid an accommodation, was a motivating factor in the adverse actions Defendants took against them. *See Abercrombie*, 575 U.S. at 773-774 ("an employer who acts with the motive of avoiding accommodation may violate Title VII even if he has no more than an unsubstantiated suspicion that accommodation would be needed"). Defendants' argument that

Plaintiffs failed to allege that they informed Defendants of their religious beliefs is therefore unavailing, provided that Plaintiffs plausibly allege that the desire to avoid an accommodation was a motivating factor in any adverse employment decisions Defendants made against them.

Plaintiffs identify several of Defendants' actions as adverse consequences of their failing to receive the COVID-19 vaccine. The Court observes that the Count I allegations themselves do not indicate any adverse actions that were taken against them in connection with their refusal to receive the COVID-19 vaccine. Doc. 14 ¶¶ 137-145; Doc. 30 ¶¶ 71-79. And, contrary to Plaintiffs' responses in opposition, Doc. 32 at 11-12, they cannot apply allegations made in other counts to Count I; only allegations that are included or incorporated into Count I's allegations can be considered in determining whether it is sufficiently pleaded. However, all the factual allegations preceding the counts are incorporated into the Count I allegations, which permits the Court to consider them when reviewing whether Plaintiffs have plausibly alleged any adverse actions. Doc. 14 ¶ 137; Doc. 30 ¶ 71. The allegations that are common to every Plaintiff state that Defendants instituted policies that required employees who received an exemption from the vaccine mandate to wear color-coded badges, wear masks, use separate common areas for bathroom and lunch breaks, pay a surcharge on their health insurance plan, and adhere to weekly COVID-19 testing. Doc. 14 ¶¶ 6, 19, 20, 35, 37, 123, 124. Defendants announced that those who did not comply with the weekly testing requirement would be placed on unpaid leave and

potentially terminated. *Id.* ¶¶ 35, 39.  Employees who did not comply with the vaccine mandate were subject to termination. *Id.* ¶¶ 25, 27, 29, 37.

Plaintiffs contend in their individual allegations and their responses in opposition that the conditions placed on unvaccinated employees, such as the masking and testing requirements, constituted adverse employment actions taken in response to their religious exemption requests. Doc. 42 at 11-12.  Their allegations plausibly allege that these conditions were motivated by Plaintiffs' inability to comply with the vaccine mandate.  Less clear is whether the conditions can be considered an adverse employment action.

An adverse employment action is a "serious and material change in the terms, conditions, or privileges of employment." *Holland v. Gee*, 677 F.3d 1047, 1057 (11th Cir. 2012).  The Eleventh Circuit does not limit adverse actions to "ultimate employment decisions" like termination. *See Crawford v. Carroll*, 529 F.3d 961, 970 (11th Cir. 2008).  Nonetheless, it has made clear that "not all conduct by an employer negatively affecting an employee constitutes adverse employment action." *Davis v. Town of Lake Park Fla.*, 245 F.3d 1232, 1238 (11th Cir. 2001), *overruled on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006).  An adverse employment action must be materially adverse as viewed by a reasonable person in the circumstances, rather than the plaintiff's subjective view. *Bhuiyan v. PNC Bank, Nat'l Ass'n.*, No. 19-14265, 2023 WL 2733510, *4 (11th Cir. 2023) (citation omitted). Therefore, the imposition of an employment condition will not be considered an adverse action unless it rises to the level of being objectively serious and material, even

if it is unpleasant or conflicts with an employee's preferences. *See*, *e.g.*, *Bender v. Miami Shores Village*, 578 F. App'x 822, 825 (11th Cir. 2014) (employer's instruction to Christian employee not to use God's name in the workplace did not constitute an adverse employment action); *Hall v. Siemens VDO Automotive*, 481 F. App'x 499, 505 (11th Cir. 2012) (the implementation of a performance improvement plan, a transfer to a different supervisor, being sent on business to Mexico, and the solicitation of negative comments about plaintiff's work from coworkers did not qualify as adverse actions); *Dixon v. Palm Beach Cnty. Parks & Rec. Dep't*, 343 F. App'x 500, 502 (11th Cir. 2009) (written record of counseling and transfer from bicycle patrol unit did not constitute serious and material change in employment conditions).

The Eleventh Circuit has not had occasion to determine whether masking, testing, and social distancing requirements qualify as adverse employment actions. At least one court in another circuit, interpreting a similar standard for adverse actions, has held that they do not. *Savel v. MetroHealth System*, No. 22-cv-2154, 2023 WL 4490395, *7-8 (N.D. Ohio July 12, 2023) (plaintiffs failed to plead Title VII religious discrimination claim because they did not allege any adverse employment actions, where they were required to mask and test upon receiving a vaccine exemption); *cf. Collins v. Tyson Foods, Inc.*, No. 1:22-cv-76, 2023 WL 2731047 (W.D. Ky. March 30, 2023) (placement on unpaid leave for one year after receiving a vaccine exemption was an adverse action). This Court agrees with the *Savel* court's holding, and further finds that Eleventh Circuit caselaw is inconsistent with Plaintiffs' argument that an employment requirement to mask, test, and socially distance constitutes an objectively

serious and material change to employment conditions. Although Plaintiffs may disagree with the conditions and find them uncomfortable, they have not demonstrated that they rise to the severe level necessary to constitute adverse employment actions for the purpose of a Title VII religious discrimination claim. Therefore, the thirteen Reid Plaintiffs who allege no other adverse actions besides the implementation of these conditions have failed to state a claim.[9]

In contrast, many Plaintiffs allege that they were terminated, placed on unpaid leave, constructively discharged, or denied promotions as a result of their inability to comply with Defendants' vaccine mandate. These actions qualify as adverse employment actions. *See Webb-Edwards v. Orange Cnty. Sheriff's Office,* 525 F.3d 1013, 1031 (11th Cir.2008) ( "The Supreme Court has defined an adverse employment action as follows: 'A tangible employment action constitutes significant change in employment status such as hiring, firing, failing to promote, reassignment with significantly different responsibilities or a decision causing a significant change in benefits.'"), quoting *Burlington Indus., Inc. v. Ellerth,* 524 U.S. 742, 761 (1998). Therefore, it is possible that these Plaintiffs will state a claim for Title VII discrimination.

However, some Plaintiffs who allege that they faced these adverse actions make clear that the actions did not directly result from a religious conflict. Plaintiffs allege

---

[9] ¶ 91 (Shepherd), ¶ 92 (Burchard), ¶ 94 (Haines), ¶ 95 (Netotea), ¶ 97 (Grant), ¶ 98 (Meyer), ¶ 99 (McDuffee), ¶ 100 (Schow), ¶ 101 (Craven), ¶ 103 (Hartman), ¶ 105 (Ashford), ¶ 106 (Mannino), ¶ 108 (Reed).

that Defendants' policy was to place unvaccinated individuals who would not comply with a testing requirement on unpaid leave, with possible termination to follow. Doc. 14 ¶¶ 35, 39. None of the Plaintiffs assert that their religious beliefs prevented them from complying with a testing requirement, or with any other employment conditions aside from the receipt of the vaccine. Thus, any allegation that a Plaintiff was placed on unpaid leave or terminated because they failed to comply with one of these other employment conditions does not plausibly state a claim for Title VII discrimination. *See Passmore v. 21st Century Oncology, LLC*, No. 3:16-cv-1094, 2018 WL 1738715, *4 (M.D. Fla. April 11, 2018) (plaintiffs failed to state a claim for Title VII discrimination under reasonable accommodation theory where they did not allege that their religious beliefs conflicted with the employer's rules); *see also Egelkrout v. Aspirus, Inc.*, No. 22-cv-118, 2022 WL 2833961, *3 (W.D. Wis. July 20, 2022) (dismissing Title VII religious discrimination claim where plaintiff objected to COVID-19 testing option in lieu of vaccination, but had no religious conflict with testing). The five Plaintiffs who allege that they were placed on unpaid leave or terminated for failing to comply, or complying incompletely, with the non-vaccine conditions have not plausibly alleged a Title VII failure to accommodate claim.[10]

Similarly, some Plaintiffs allege that they were placed on unpaid leave or terminated for refusing to disclose their vaccination status, or they imply that they did

_____

[10] Doc. 14 ¶ 74 (Maldonado), ¶ 80 (Little), ¶ 85 (Pentrack), ¶ 89 (Fernandez), ¶ 110 (Cundiff).

not even apply for an exemption.[11]  But they do not allege that they had a religious conflict with the disclosure of their status or with the exemption application itself, both of which became conditions of employment once the vaccine mandate was implemented.  Thus, they have not plausibly alleged that Defendants took adverse action against them because of their religious inability to comply with an employment requirement.  These eight Plaintiffs also do not state a Title VII discrimination claim.

Sixteen Plaintiffs allege that they were constructively discharged in connection with the vaccine mandate; another states that he was "forced to request and go on short-term disability leave," which the Court will interpret under the same framework.[12]  But a plaintiff cannot merely allege, conclusorily, that he or she was constructively discharged in order to survive a motion to dismiss.  "The threshold to prove constructive discharge is 'quite high'[.]" *Moore v. San Carlos Park Fire Protection & Rescue*, 808 F. App'x 789, 798 (11th Cir. 2020), quoting *Hipp v. Liberty Nat. Life Ins. Co.*, 252 F.3d 1208, 1231 (11th Cir. 2001).  "To succeed on a constructive discharge claim, a plaintiff must show that working conditions were so intolerable that a reasonable person in [the plaintiff's] position would have been compelled to resign." *Id.*  In *Moore*, the court found that the plaintiff had failed to plead sufficient facts to support a claim for constructive discharge, where her allegations were "extremely

---

[11] Doc. 14 ¶ 51 (Thomas), ¶ 58 (Brook Booth), ¶ 59 (Steve Booth), ¶ 60 (Martinez), ¶ 61 (Brown), ¶ 70 (Oman), ¶ 77 (Moes), ¶ 86 (Kolundzic).

[12] Doc. 14 ¶ 49 (Reid), ¶ 56 (Akers), ¶ 62 (Meintel), ¶ 63 (Kezele), ¶ 64 (Evans), ¶ 66 (Pixler), ¶ 67 (Richardson), ¶ 69 (Tira), ¶ 72 (Villines), ¶ 74 (Maldonado), ¶ 76 (Childress), ¶ 77 (Moes), ¶ 78 (Roden), ¶ 79 (Sorenson), ¶ 80 (Little), ¶ 93 (Saunders).

vague" and did not "reference specific dates or circumstances in which the allegedly discriminatory acts occurred." *Id.* The court therefore could not determine whether a reasonable person in her position would have been compelled to resign. *Id.*; *see also Agostino v. Lee Cnty. Bd. of Cnty. Commissioners*, No. 2:17-cv-236, 2017 WL 2930807, *3 (M.D. Fla. July 10, 2017) (conclusory statement that "work conditions were so intolerable that [plaintiff] had no choice but to resign" was inadequate to state a claim for constructive discharge, where factual allegations failed to show that a reasonable person would have agreed); *Griner v. City of Sanibel, Fla.*, No. 2:17-cv-282, 2017 WL 3782788, *3 (M.D. Fla. Aug. 31, 2017) (granting motion to dismiss constructive discharge claim comprised of conclusory statement that "faced with the same circumstances and knowledge of the past treatment of former officers which led to their being pushed out of the department, a reasonable person would have resigned.").

Here, Plaintiffs' allegations that they were constructively discharged are conclusory. The underlying factual allegations are not sufficient to establish that a reasonable person would have found their working conditions so intolerable that they would have been forced to resign. The allegations provide little, if any, context for the alleged constructive discharges. Although the collective allegations contain anecdotes about actions taken against unvaccinated employees at certain work sites, Doc. 14 ¶¶ 126, 127, these claims are vague and are not tied to any of the named Plaintiffs. Two of the individual allegations regarding constructive discharge go into some detail. Gabe Maldonado references constructive discharge after stating he was placed on unpaid leave for failing to comply with the weekly testing requirement, which he does

not allege conflicted with his religious belief; as noted, this does not qualify as a Title VII adverse action. *See* Doc. 14 ¶ 74.  Dale Richardson refers to a specific incident that he says forced him to resign on March 18, 2022. *Id.* ¶ 67.[13]  Although his allegations come the closest to stating a claim for constructive discharge, they still do not plausibly allege working conditions that reach the high bar of being so objectively intolerable that a reasonable person would have been compelled to resign. *See, e.g.*, *Hipp*, 252 F.3d at 1232-33, 1237 (allegation that employee was verbally attacked in multiple public incidents, and told that he should quit if he was unable to do his job, that he was doing a 'lousy job,' and that he was a terrible district manager did not rise to the level of constructive discharge).  Because none of the Plaintiffs' allegations allow the Court to infer that a reasonable person would have found the working conditions intolerable, no Plaintiff has adequately alleged that they were constructively discharged.  Absent plausible allegations of an adverse action, these Plaintiffs' Count I claims must be dismissed as well.

Next, three of the Reid Plaintiffs allege that they were denied promotions pursuant to a "do not promote list" because of their vaccination status. Doc. 14 ¶ 87 (Smerekanich), ¶ 104 (Doe), ¶ 109 (Cumpton).  The failure to promote is considered an adverse employment action. *See Webb-Edwards,,* 525 F.3d at 1031.  To establish a prima facie case for a discriminatory failure to promote claim, the plaintiff must show

---

[13] Richardson alleges that a human resources executive "berated [Richardson] for his vaccination status…on emails copied to others in management" and "threatened to continue the weekly testing just for" Richardson.

that (1) she belongs to a protected class, (2) she applied for and was qualified for a promotion, (3) she was rejected despite her qualifications, and (4) other equally or less-qualified employees outside her class were promoted. *McNeal v. Tarrant*, 325 F. App'x 794 (11th Cir. 2009), citing *Wilson v. B/E Aerospace, Inc.*, 376 F.3d 1079, 1089 (11th Cir. 2004), *abrogated on other grounds by Lewis v. City of Union City, Ga.*, 918 F.3d 1213 (11th Cir. 2019). None of the three Plaintiffs here include sufficient information from which the Court may infer that their inability to comply with the vaccine mandate was a motivating factor in the fact that they did not receive a promotion. Doe alleges only that Defendants have "refused her…promotion opportunities," which is too vague to reveal whether she even applied for a promotion, let alone whether her vaccine status was a motivating factor in her not receiving it. Doc. 14 ¶ 104. Smerekanich alleges that he was passed over for a promotion despite being qualified, and Cumpton alleges that she lost out on a promotion to someone whom she implies was unqualified. *Id.* ¶¶ 87, 109. Absent additional details, such as whether the person who received the promotion was vaccinated and similarly situated to Plaintiffs in material respects, neither allegation plausibly suggests discriminatory intent. Accordingly, the Court finds that these Plaintiffs have not plausibly alleged that they did not receive a promotion because of their inability to comply with the vaccine mandate.

Finally, the Court is left with 19 Plaintiffs who allege that they were placed on unpaid leave or terminated after requesting a vaccine exemption. *Cf. Burcham v. City of Los Angeles*, 562 F.Supp.3d 694, 708 (C.D. Cal. 2022) (dismissing Title VII discrimination claim where plaintiffs failed to allege they experienced any adverse

action after applying for an exemption). Two Plaintiffs allege that they were terminated after they were "not allowed" to apply for an exemption, without further explanation. Doc. 14 ¶ 53 (Knowlton), ¶ 54 (Sledge). Three other Plaintiffs allege that they were subject to unpaid leaves and/or terminated after their sincere religious exemption requests were denied. *Id.* ¶ 55 (Boysen), ¶ 81 (Veenstra), ¶ 82 (Kelly); *cf.* Doc. 32 (repeatedly asserting that no Plaintiffs allege they were denied an exemption). And Norris and 13 of the Reid Plaintiffs allege that they were placed on unpaid leave and/or terminated after requesting an exemption, without any details regarding its acceptance or denial, or their compliance or lack thereof with any resulting conditions.[14] It is possible that additional factual allegations, or facts obtained during discovery, would demonstrate that these Plaintiffs do not have a valid Title VII failure to accommodate claim, just as they did for the Plaintiffs described in the preceding paragraphs. *See, e.g.*, *Breshears v. Or. Dep't of Trans.*, 2:22-cv-1015 2023 WL 136550, *3 (D. Or. Jan. 8, 2023) (plaintiff alleged that employer offered to accommodate him by requiring a mask but he refused and was then placed on unpaid leave).

As currently pleaded, however, the Court finds that these Plaintiffs have plausibly alleged that Defendants took adverse action against them at least in part because of their inability to comply with the vaccine mandate with which their religious beliefs conflicted. As noted, at this stage the Court need only find that the

---

[14] *See* Doc. 30 ¶¶ 49, 62 (Norris); Doc. 14 ¶ 50 (Chee), ¶ 52 (Debona), ¶ 57 (Loudenbeck), ¶ 65 (Godley), ¶ 68 (Sanchez), ¶ 71 (Wilder), ¶ 73 (Sanders), ¶ 75 (Tuttle), ¶ 83 (Long), ¶ 84 (Mason), ¶ 88 (Keri Mason), ¶ 80 (Geracci), ¶ 96 (Geis).

factual allegations plausibly suggest that a desire to avoid an accommodation was a motivating factor in the adverse action; Plaintiff need not establish that discrimination was a but-for cause. *See* 42 U.S.C. § 2000e-2(m); *Surtain*, 789 F.3d 1239 at 1246.[15] Viewing the pleadings as a whole, and making all reasonable inferences in Plaintiffs' favor, Plaintiffs' allegations regarding Defendants' conduct plausibly suggest a desire for all employees to be vaccinated, irrespective of their religious beliefs. Accordingly, the Court concludes that Norris and the identified 18 Reid Plaintifs have stated a claim for Title VII religious discrimination under the failure to accommodate theory that they plead. The Florida Plaintiffs among them may proceed with Count I as it is currently pleaded.[16] The other Florida Plaintiffs will be given leave to amend.

### 2. Title VII Retaliation (Count II)

In Count II, Plaintiffs allege that Defendants retaliated against them after they requested exemptions from Defendants' vaccine mandate due to their sincere religious beliefs. Doc. 14 ¶¶ 146-154; Doc. 30 ¶¶ 80-88. The retaliation took the form of the imposition of different employment conditions for Plaintiffs who were unvaccinated,

---

[15] To the extent that Defendants rely in their briefing on cases involving requests for preliminary injunctive relief, which are evaluated under a more stringent standard—likelihood of success on the merits—than a motion to dismiss, the Court finds that they are inapposite. *See* Doc. 32 at 14-15.

[16] The Florida Plaintiffs whose Count I claims survive are Norris (Doc. 30), and Doc. 14 ¶ 50 (Chee), ¶ 52 (Debona), ¶ 84 (B. Mason), and ¶ 90 (Geracci). The following Florida Plaintiffs Count I claims are dismissed without prejudice: Doc. 14 ¶ ¶ 49 (Reid), ¶ 51 (Thomas), ¶ 53 (Knowlton); ¶ 54 (Sledge), ¶ 55 (Boysen), ¶ 80 (Little), ¶ 82 (Kelly), ¶ 83 (Long), ¶ 85 (Pentrack), ¶ 86 (Kolundzic), ¶ 89 (Fernandez), ¶ 91 (Shepherd).

as well as unpaid leave, termination, or constructive discharge. *Id.* ¶¶ 85-86; Doc. 14 ¶¶ 151-152.

Defendants' arguments regarding Title VII retaliation are the same as for the ADA retaliation claims. First, they argue that Plaintiffs do not adequately allege that they engaged in protected activity, and that not all Plaintiffs allege that they requested religious exemptions. Doc. 32 at 19-21. They also argue that Plaintiffs inadequately allege that their complaints were the cause of Defendants' supposedly retaliatory policies, which predated the complaints. *Id.* at 21. Without addressing Title VII specifically, or the element of causation, Plaintiffs respond that their allegations were sufficient to plausibly allege all three elements of a retaliation claim. Doc. 42 at 15-18. Defendants argue in reply that Plaintiffs' allegations are conclusory. Doc. 51 at 7.

As with ADA retaliation, Title VII retaliation requires a plaintiff to plausibly allege that: (1) he engaged in statutorily protected expression; (2) he suffered an adverse employment action; and (3) there was a causal link between the protected expression and the adverse action. *Little v. United Technologies, Carrier Transicold Div.*, 103 F.3d 956, 959 (11th Cir. 1997). Defendants dispute the sufficiency of the first and third prongs.

### a. Protected Activity

Title VII makes it unlawful for an employer to discriminate against an employee because he opposed any practice made unlawful by Title VII. 42 U.S.C. § 2000e-3(a). Opposing a practice made unlawful by Title VII is thus a protected expression or activity under the first prong of the retaliation analysis. *See Brown v. City of Opelika*, 211

F. App'x 862, 864 (11th Cir. 2006) (affirming summary judgment to employer because record contained no evidence that plaintiff engaged in a protected activity by making a complaint about racial discrimination or harassment).  The term "oppose" "carries its ordinary meaning…[of] to resist or antagonize, to contend against, to confront, resist, withstand." *Crawford v. Metropolitan Gov't of Nashville and Davidson Cnty., Tenn.*, 555 U.S. 271, 276 (2009) (modifications omitted).

When defining Title VII opposition, the *Crawford* court approvingly cited a guideline from the Equal Employment Opportunity Commission ("EEOC"): "When an employee communicates to her employer a belief that the employer has engaged in a form of employment discrimination, that communication virtually always constitutes the employee's *opposition* to the activity." *Id.* (citations and modifications omitted; emphasis in original).  The flip side of this principle is that opposing an unlawful practice "requires at least the disclosure of an individual's position or opinion on a matter." *Thampi v. Manatee Cnty. Board of Com'rs*, 384 F. App'x 983, 990 (11th Cir. 2010).  The employee must "at the very least, communicate her belief that discrimination is occurring to the employer." *Demers v. Adams Homes of Northwest Fla., Inc.*, 321 F. App'x 847, 852 (11th Cir. 2009) (quotation omitted); *see also Furcron v. Mail Centers Plus, LLC*, 843 F.3d 1295, 1311 (11th Cir. 2016) ("The statute's protections only reach individuals who explicitly or implicitly communicate a belief that the practice constitutes unlawful employment discrimination") (quotation omitted); *Murphy v. City of Aventura*, 383 F. App'x 915, 918 (11th Cir. 2010) (same).

For this reason, the *Demers* court noted that "[a] simple request for maternity leave would not suffice, because it alone would not announce opposition to the discriminatory basis for its denial." 321 F. App'x at 852 (citation omitted); *see also Benitez v. True Choice Telecom, LLC*, No. 6:19-cv-2148, 2020 WL 10058215, *2 (M.D. Fla. March 26, 2020) (dismissing Title VII retaliation count where plaintiff requested an accommodation to her work schedule and maternity leave, but did not complain about discrimination or about being denied accommodations or maternity leave). Similarly, in *Ingram v. Sec'y of the Army*, 743 F. App'x 914, 918 (11th Cir. 2018), the court found no protected activity had occurred where the plaintiff's emails complaining about a work conflict did not suggest the conflict was motivated by racial discrimination. *See also Birdyshaw v. Dillard's Inc.*, 308 F. App'x 431, 436-437 (11th Cir. 2009) (affirming summary judgment to employer where plaintiff's internal complaints did not constitute protected activity because they did not accuse employers of discriminating against plaintiff on a ground protected by Title VII); *Odom v. Coastal States Automotive Group Mgmt., LLC*, No. 4:20-cv-264, 2022 WL 3586693, *13 (S.D. Ga. Aug. 22, 2022) (plaintiff's rejection of supervisor's advances did not constitute opposition to discrimination under Title VII, absent evidence she complained about it to anyone affiliated with defendant prior to her termination).

Thus, here, to satisfy the first prong of Title VII retaliation, Plaintiffs must allege that they opposed an unlawful practice by complaining, or at least implying, that it constituted discrimination on a ground protected by Title VII. In the allegations that are specific to Count II, Plaintiffs allege that they were retaliated against after they

"requested exemptions from Defendant's Mandate." *See* Doc. 30 ¶¶ 84-85. Although they explain in the pleadings that their "sincere religious beliefs…preclude[d] them from" complying with the mandate, *id.* ¶ 83, they do not allege that they communicated to Defendants a belief that the mandate constituted religious discrimination. Simply requesting an exemption is not enough to establish a protected activity under Title VII's opposition clause. *See Demers*, 321 F. App'x at 852; *Benitez*, 2020 WL 10058215 at *2.

Moreover, Plaintiffs' underlying factual allegations do not bridge the gap. Neither Norris's nor the Reid Plaintiffs' collective allegations state that they communicated their belief that the mandate constituted religious discrimination when requesting an exemption. *See* Docs. 14, 30. With respect to their individual allegations, Norris and several of the Reid Plaintiffs state only that they requested an exemption or otherwise refused to comply with the mandate, with no indication that they raised the issue of religious discrimination. Doc. 30 ¶¶ 54, 84; Doc. 14 ¶ 49 (Reid), ¶ 50 (Chee), ¶ 70 (Oman), ¶ 81 (Veenstra), ¶ 87 (Smerekanich). Others stated only that they "objected" to the mandate because of their religious beliefs, with no further information on the form that objection took. Doc. 14 ¶ 52 (Debona), ¶ 57 (Loudenbeck), ¶ 61 (Brown). Twenty-three of the Reid Plaintiffs state that they "filed a charge of discrimination with the EEOC…alleging that…[they were] retaliated against for requesting an exemption and complaining about the disparate treatment"—

but fail to directly allege that they complained about disparate treatment, or that the disparate treatment was based on their religious beliefs.[17]

Nearly half of the Reid Plaintiffs allege that they complained to Human Resources or management about disparate treatment that unvaccinated employees faced and/or the "discriminatory exemption process,"[18] or simply "discrimination."[19] But even these allegations fail to indicate that Plaintiffs complained about a form of discrimination that is protected by Title VII. *See Birdyshaw*, 308 F. App'x at 436 (plaintiff's statement that defendant was trying to "'clean house' by getting rid of all of the 'older managers'" was not protected activity for Title VII retaliation because age discrimination is not protected under Title VII). The few allegations that contain details reveal that those complaints did not raise religious discrimination: one Reid Plaintiff explains that she complained "that the weekly testing was cost prohibitive to her," Doc. 14 ¶ 94(c) (Haines), while Norris alleges that he complained about "disparate treatment based on perceived disability" in the context of his ADA retaliation claim. Doc. 30 ¶¶ 102-103. Therefore, even the Plaintiffs who allege that

---

[17] Doc. 14 ¶ 62 (Meintel), ¶ 64 (Evans), ¶ 65 (Godley), ¶ 66 (Pixler), ¶ 67 (Richardson), ¶ 68 (Sanchez), ¶ 69 (Tira), ¶ 71 (Wilder), ¶ 74 (Maldonado), ¶ 76 (Childress), ¶ 83 (Long), ¶ 84 (Brian Mason), ¶ 88 (Keri Mason), ¶ 89 (Fernandez), ¶ 90 (Geracci), ¶ 91 (Shepherd), ¶ 93 (Saunders), ¶ 103 (Hartman), ¶ 104 (Doe), ¶ 105 (Ashford), ¶ 106 (Mannino), ¶ 109 (Cumpton), ¶ 110 (Cundiff).

[18] Doc. 14 ¶ 51 (Thomas), ¶ 53 (Knowlton); ¶ 54 (Sledge), ¶ 58 (Brooke Booth), ¶ 59 (Steve Booth), ¶ 60 (Martinez), ¶ 63 (Kezele), ¶ 72 (Villines), ¶ 73 (Saunders), ¶ 75 (Tuttle), ¶ 77 (Moes), ¶ 78 (Roden), ¶ 79 (Sorenson), ¶ 80 (Little), ¶ 86 (Kolundzic), ¶ 94 (Haines), ¶ 95 (Netotea), ¶ 97 (Grant), ¶ 98 (Meyer), ¶ 99 (McDuffeee), ¶ 100 (Schow), ¶ 101 (Craven), ¶ 108 (Reed).

[19] Doc. 14 ¶ 82 (Kelly), ¶ 85 (Pentrack), ¶ 92 (Burchard), ¶ 96 (Geis).

they made a complaint do not plausibly allege that their complaint raised religious discrimination.

The closest allegation comes from Joseph Akers, who "objected to the ongoing questions concerning the substance of his beliefs" that arose during the exemption process. Doc. 14 ¶ 56(c). It is possible that Akers' objection included an accusation that the questions constituted religious discrimination. However, it is equally possible to infer from this allegation that he told Defendants the questions violated his privacy, or that he simply declined to answer them without explanation. Even at the pleading stage, a plaintiff's allegations must be sufficient to "raise a right to relief above the speculative level[,]" which requires "more than a sheer possibility that the defendant has acted unlawfully." *McCullough v. Bd. of Regents of the Univ. System of Ga.*, 623 F. App'x 980, 983 (11th Cir. 2015) (quotations omitted). Akers' allegation fails to establish more than a sheer possibility that he raised the issue of religious discrimination when objecting to Defendants' policies. Therefore, his claim does not plausibly allege that Defendants retaliated against him under the opposition clause. None of the Plaintiffs have stated a claim for Title VII retaliation. Count II must be dismissed as to all Plaintiffs.

### b. Causation

Assuming, *arguendo*, that Plaintiffs plausibly alleged that they opposed a discriminatory practice within the meaning of Title VII, they must also allege sufficient facts to support a causal connection between their opposition and the adverse employment action they are alleging is retaliatory. *McCullough*, 623 F. App'x at 982-

983.  A conclusory statement that the two events were causally connected is not sufficient. *Id.* at 983 (allegation that "upon information and belief" denial of admission to plaintiff resulted from retaliation for his racial discrimination complaint was insufficient to state a claim for Title VII retaliation); *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *cf.* Doc. 14 ¶ 151; Doc. 30 ¶ 85 (alleging that adverse actions were taken "[i]n retaliation").

A causal link between protected expression and an adverse action exists where the defendant was aware of the protected activity and took adverse action as a result. *Shannon v. BellSouth Telecomm., Inc.*, 292 F.3d 712, 716 (11th Cir. 2002).  The causation element is interpreted broadly in the prima facie stage, such that "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Pennington v. City of Huntsville*, 261 F.3d 1262, 1266 (11th Cir. 2001) (quotation omitted); *Tolar v. Bradley Arant Boult Commings, LLP*, 997 F.3d 1280, 1294 (11th Cir. 2021) (more demanding "but for" test is required at the stage of summary judgment proceedings in which the plaintiff must rebut the defendant's proffered nonretaliatory reason as pretextual).  Evidence of causation often includes, though is not limited to, a showing of close temporal proximity between the activity and the adverse action. *Thomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007) (citations omitted).

Here, Plaintiffs allege that their opposition to Defendants' vaccine mandate led to retaliation in the form of disparate treatment, unpaid leave, termination, or

constructive discharge. Doc. 14 ¶¶ 151-152; Doc. 30 ¶¶ 85-86.  As discussed in Section IV(D)(2)(a), their opposition must have taken the form of a statement that alleged or implied religious discrimination, as opposed to a mere request for an exemption from the mandate.

Almost none of the Plaintiffs' individual allegations plausibly allege sufficient facts to support a causal connection between their opposition and an identified adverse action.  Among the Plaintiffs who allege that they made a complaint, nearly all of their allegations lack any information from which the Court could infer a causal connection between the complaint and their termination or placement on unpaid leave, such as the respective dates of the two events.  Others include the date they made a complaint, but not the date the adverse action occurred. Doc. 14 ¶ 63 (Kezele), ¶ 92 (Burchard), ¶ 94 (Haines).  Nor do any of the Plaintiffs who fail to provide a time frame allege a different factual basis for a causal connection besides temporal proximity.

Only four of the Reid Plaintiffs identify or imply a time frame between their complaint and an allegedly adverse action.  Joseph Akers alleges that he objected to ongoing questions that were asked about his religious beliefs in November 2021, and was constructively discharged the same month. Doc. 14 ¶ 56.  Camron Brown alleges that he objected to the mandate in October 2021, and was placed on unpaid leave in January 2022. Doc. 14 ¶ 61.  Ronald Pixler alleges he made a complaint in March 2022, and was constructively discharged in or around the same month. Doc. 14 ¶ 66.  Finally, Brandon Grant alleged that Defendants' Vice President of Human Resources "replied" to his complaint about disparate treatment to suggest that he take unpaid

leave. Doc. 14 ¶ 97. Read generously, all four of these Plaintiffs have adequately alleged facts from which to infer a causal connection. Whether they have adequately pleaded that an adverse action occurred is a separate question. *See* Section IV(C)(1), *supra*; n.18, *infra*.

With respect to Brown, Doc. 14 ¶ 61, the Eleventh Circuit has held that a three-to-four-month interval is inadequate to establish the element of causation in the context of summary judgment. *Tomas v. Cooper Lighting, Inc.*, 506 F.3d 1361, 1364 (11th Cir. 2007). For the pleading stage, however, and in the specific context of this action, the Court finds that Brown has identified adequate temporal proximity to plausibly allege causation. *See McCullough*, 623 F. App'x at 983 (noting the Supreme Court's holding that the plausibility standard is "context-specific"), citing *Iqbal*, 556 U.S. at 679.

Plaintiffs also allege that Defendants' retaliation for their exemption requests took the form of employment conditions, such as masking and testing requirements, that applied only to those who received an exemption.[20] The allegations do allow a reasonable inference that the imposition of these conditions directly followed

---

[20] In *Burlington Northern and Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006), the Supreme Court held that Title VII's anti-retaliation provision protects employees from a broader range of adverse actions than Title VII's anti-discrimination provision. For Title VII retaliation, the plaintiff "must show that a reasonable employee would have found the challenged action materially adverse," which means "it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination." *Id.* at 68 (quotations omitted). Therefore, this Court's finding that the employment conditions imposed on unvaccinated employees were not adverse actions for Count I does not mean they are not adverse actions for Count II. In any event, Defendants do not challenge whether Plaintiffs have adequately pleaded an adverse action for Count II.

approved exemption requests. But they also make clear that Defendants' policy was to impose these conditions on all unvaccinated employees, not only those who requested a religious exemption. *See* Doc. 14 ¶¶ 19-21, 35, 37, 41. In other words, the policy resulted from employees' unvaccinated status, rather than any opposition to discriminatory behavior. *See Leake v. Raytheon Tech. Corp.*, No. CV-22-436, 2023 WL 2242857, *5 (D. Ariz. Feb. 27, 2023) (dismissing Title VII disparate treatment claim where policy treated all vaccination-exempt employees the same, regardless of religious beliefs, and plaintiffs did not establish any discriminatory intent in issuing the mandate or the conditions that applied to unvaccinated employees). As a result, any inference that the conditions were caused by Plaintiffs' religious opposition to the vaccine mandate is unreasonable.

Accordingly, even if Plaintiffs had adequately pleaded a protected activity for Title VII retaliation, all but four of them would have failed to plausibly allege the element of causation. Count II is due to be dismissed as to all Plaintiffs. To the extent Plaintiffs wish to assert a cause of action for Title VII retaliation, they will be given leave to file amended pleadings that cure the defects identified in this Order.

### D. Allegations of Employer (*8:22cv2210 only*)

Having narrowed the claims at issue in this action, the Court will consider Defendants' argument that the Reid Plaintiffs inadequately pleaded that both Honeywell and FM&T are their "employer" for the purpose of the discrimination statutes. Defendants assert that Plaintiffs' allegation that they were employees of both Defendants is conclusory and fails to answer the relevant question of "whether the

parent company exercises a sufficient degree of control over the adverse employment decision on which the suit is based." Doc. 32 at 11-12, citing *Hilliary v. FlightSafety Int'l, Inc.*, No. 1:17-cv-999, 2017 WL 11316735, *5 (N.D. Ga. Oct. 20, 2017).

Plaintiffs respond that their factual allegations are sufficient to plausibly allege a joint employment relationship between the two Defendants, and that the vaccine mandate and related policies came from Honeywell and were consistent between the two entities. Doc. 42 at 19-20. They contend that their allegations "create, at the very least, an inference that both Defendants shared control over the employment actions of at least some of the named Plaintiffs, particularly those in Missouri." *Id.* at 19.

An employer-employee relationship is a prerequisite of an "unlawful employment practice" prohibited by Title VII. 42 U.S.C. § 2000e-2; *see Kolczynski v. United Space All., LLC*, No. 6:04-cv-716, 2005 WL 2291706, *2 (M.D. Fla. Sept. 20, 2005). To determine whether an entity is an employer for Title VII purposes, courts generally consider "(1) how much control the alleged employer exerted on the employee, and (2) whether the alleged employer had the power to hire, fire, or modify the terms and conditions of the employment." *Peppers v. Cobb Cnty.*, 835 F.3d 1289, 1297 (11th Cir. 2016).

"It is a general principle of corporate law 'deeply ingrained in our economic and legal systems that a parent corporation…is not liable for the acts of its subsidiaries.'" *Hiliary*, 2017 WL 11316735 at *5, quoting *United States v. Bestfoods*, 524 U.S. 51, 61 (1998). For a defendant to be considered a joint employer with a related entity for Title VII purposes, it must be "in control of the fundamental aspects of the

employment relationship that gave rise to the claim." *Lyes v. City of Riviera Beach*, 166 F.3d 1332, 1345 (11th Cir. 1999) (citations omitted).  In other words, courts assess "the degree of control an entity has over the adverse employment decision on which the Title VII suit is based." *Llampallas v. Mini-Circuits, Lab, Inc.*, 163 F.3d 1236, 1244-45 (11th Cir. 1998) (granting summary judgment to one defendant where evidence showed it "had absolutely nothing to do with" the decision to terminate plaintiff's employment).  The question of control "requires consideration of the totality of the employment relationship." *Lyes*, 166 F.3d at 1345.

Because the question is highly fact-specific, "[c]ourts usually determine whether a defendant is a joint employer at the summary judgment stage." *Key v. Hyundia Motor Mfg., Ala., LLC*, No. 2:19-cv-767, 2021 WL 3909663, *8 (M.D. Ala. Aug. 31, 2021) (collecting cases).  At the motion to dismiss stage, "the Court is limited to considering whether a plaintiff has alleged specific facts that the defendant had enough control to plausibly be a joint employer." *Id.*; *see also Williams v. Mizkan Holdings Co. Ltd.*, 8:18-cv-413, 2019 WL 13272285, *6 (M.D. Fla. Jan. 22, 2019) (Honeywell, J.) (noting that the issue of joint employment is "much more fact specific and more appropriate to analyze at the summary judgment stage[,]" but granting motion to dismiss claims against co-defendant because complaint failed to even allege that plaintiff was co-defendant's employee); *Townsend v. Hilton Worldwide, Inc.*, No. 8:16-cv-990, 2016 WL 6518437, *4-5 (M.D. Fla. Nov. 1, 2016) (Kovachevich, J.) (finding defendant's arguments about whether it was plaintiff's employer more appropriate for a dispositive

motion than a motion to dismiss, where plaintiff's allegations did not foreclose a joint employment relationship).

As with all pleading issues, however, conclusory allegations are not sufficient to plausibly allege that defendants are in a joint employment relationship. In *Alvarez v. Bechtel Corp.*, No. 4:21-cv-87, 2022 WL 660177, *6 (S.D. Ga. March 4, 2022), for example, the court granted a motion to dismiss after finding that the bare allegation that the co-defendant was in a "joint venture" with the other defendant was not enough to create an inference that the two defendants should be aggregated. *See also Key v. Hyundai Motor Mfg, Ala., LLC*, No. 2:19-cv-767, 2021 WL 3909663, *8 (M.D. Ala. Aug. 31, 2021) (disregarding "conclusory and speculative 'upon information and belief' statements" in determining whether complaint plausibly alleged joint employer relationship); *Underwood v. Chick-fil-A, Inc.*, No. 1:09-cv-2831, 2010 WL 11718325, *2-3 (N.D. Ga. Aug. 18, 2010) (allegation that franchisee "acted on behalf of himself and [franchisor co-defendant]" when taking adverse employment actions was "exactly the type of legal conclusion couched as factual allegation that *Twombly* and *Iqbal* make clear is insufficient to withstand a motion to dismiss."). In *Underwood*, the court found that the complaint's non-conclusory allegations—that the franchisor chose the allegedly discriminatory franchisee and that franchisor employees complimented the plaintiff on her job performance—were inadequate to plausibly allege that the franchisor company was also plaintiff's employer. *Id.* at *2-3. Similarly, in *Hilliary*, 2017 WL 11316735 at *5, allegations that the co-defendant, a parent company, published ethics and conduct policies and maintained a third-party complaint hotline

for all employees of its subsidiaries were insufficient to suggest that it was a decisionmaker or exercised any control over any alleged adverse employment actions taken against the plaintiff by the subsidiary.

In contrast, the court in *Key*, 2021 WL 3909663 at *8, found that plaintiff pleaded enough facts to plausibly show that Hyundai had enough control of plaintiff's employment to support a joint relationship with the staffing agency that hired and paid her, where she alleged that she worked at a facility owned by Hyundai, Hyundai's name was listed as the "customer" on her paycheck, and an email relevant to her discrimination claim came from a Hyundai email address. Likewise, in *Crawford v. Place Properties, LP*, 4:16-cv-146, 2017 WL 380928, *4 (S.D. Ga. Jan. 26, 2017), allegations that the parent company made hiring and firing decisions for the subsidiary and paid plaintiff's salary were sufficient to survive a motion to dismiss. *See also Johnson v. Tutera Senior Living*, No. 2-19-cv-1047, 2020 WL 6783601, *2 (M.D. Ala. Nov. 23, 2020) (plaintiff plausibly alleged employment relationship with defendant who gave her pay raises and performance bonuses and terminated her employment). In *Townsend*, the allegations that Defendant hired the plaintiff, and that her other employer was a "management team" and a "franchisee company" of Defendant, were enough to survive a motion to dismiss. 2016 WL 6518437 at *4-5.

Here, the Amended Complaint alleges that Honeywell is the parent company and a managing member of FM&T. Doc. 14 ¶ 114. In 2004, they shared a Vice President Corporate Secretary and Deputy General Counsel who appointed two individuals to act as attorneys-in-fact for many Honeywell subsidiaries, including

FM&T. *Id.* ¶ 115. Honeywell "provides direction and controls the employment practices [of] its subsidiaries and thereby their employees, for such matters as the vaccine mandate and the process for requesting accommodations." *Id.* ¶ 116. Plaintiffs further allege that both Defendants used the same accommodation request form and the same approval/denial form. *Id.* The complaint also alleges that Honeywell's Vice President and General Counsel for Human Resources and its President sent emails on October 13, 2021, and November 3, 2021, respectively, that referred to the vaccine mandate and the ability to apply for exemptions. *Id.* ¶¶ 31, 33. Finally, the complaint provides excerpts from a "Code of Business Conduct" published by Honeywell, although its application to FM&T is unclear. *Id.* ¶¶ 42-47. Otherwise, the Amended Complaint uses the collective term "Defendants" when referring to specific actions. The Court will disregard the conclusory allegations that there is a joint employment relationship between Defendants with respect to Plaintiffs and that Honeywell "exerts direct control over its subsidiaries." *Id.* ¶¶ 113, 115; *see*, *e.g.*, *Alvarez v. Bechtel Corp.*, 2022 WL 660177 at *6.

As explained in Section II, *supra*, the Court adopts the plainest reading of the Amended Complaint and infers that all Reid Plaintiffs are directly employed by FM&T, and that they are alleging that Honeywell is their joint employer because it is FM&T's parent company. The Court further infers that individual actions attributed to "Defendants" in the factual allegations refer to specific FM&T employees, with whom Plaintiffs are alleging Honeywell acted jointly. Again, to the extent the plainest

reading of the Amended Complaint is not the correct one, Plaintiffs must file an amended pleading. *See* Section II.

Under that assumption, the Court finds that Plaintiffs' allegations plausibly allege that Honeywell was involved in policies related to the vaccine mandate and the exemption process. On the other hand, the allegations do not establish that Honeywell was involved in any of the specific adverse employment decisions that affected the remaining Plaintiffs—the placement on unpaid leave and/or termination for failing to receive a vaccine despite requesting an exemption—because these actions are not alleged to be part of Defendants' official policies.[21] The Amended Complaint also fails to allege that Honeywell was generally involved in its subsidiaries' hiring, termination, or payment. *Cf. Johnson*, 2020 WL 6783601 at *2; *Townsend*, 2016 WL 6518437 at *4-5. Honeywell's publication of a code of conduct does not bridge the gap, even assuming it applies to all its subsidiaries' employees. *See Hilliary*, 2017 WL 11316735 at *5.

The Court is cognizant that the existence of a joint employment relationship is a fact-specific issue best suited for summary judgment, and that discovery has not yet occurred. *See Williams*, 2019 WL 13272285 at *6; Doc. 42 at 20. However, the Amended Complaint lacks any factual support at all for an allegation that Honeywell was involved in the discriminatory adverse actions taken against Plaintiffs. It does not

---

[21] As discussed in Section IV(C)(1), any consequences of the failure to comply with *exemption conditions* may be official policies that could be plausibly attributed to Honeywell, but do not qualify as adverse actions under a failure to accommodate theory of religious discrimination.

plausibly allege that Honeywell is a joint employer with FM&T under Title VII. As a result, the remaining Plaintiffs' claims against Defendant Honeywell must be dismissed, with leave to amend.

## V.    Class Allegations

Finally, Defendants argue that both pleadings' class allegations should be dismissed because, on their face, they cannot satisfy the requirements of Rule 23. Doc. 32 at 22-26; Doc. 33 at 12-17.    However, the Court agrees with Plaintiffs that Defendants' class certification arguments are more appropriately addressed at the motion for class certification stage. *See* Doc. 41 at 12-13; Doc. 42 at 20-21. Given that the pleadings are likely to be substantially redrafted as a result of this Order, it would not serve judicial economy to make a ruling on the class certification issue now. The Court therefore finds that it is not yet a "practicable time" to make a determination regarding class certification. *See* Fed. R. Civ. P. 23(c); *see also Herrera v. JFK Medical Center Ltd. Partnership*, 648 F. App'x 930, 934 (11th Cir. 2016) (noting that "[w]hile it is sometimes possible to decide the propriety of class certification from the face of the complaint," such a determination "usually should be predicated on more information than the complaint itself affords.") (quotations omitted).    Therefore, Defendant's motion to dismiss the class allegations is denied.

Accordingly, it is **ORDERED**:

1.  Defendant Honeywell International, Inc.'s Motion to Dismiss in Case No. 8:22-cv-1675 (Doc. 33) is granted-in-part and denied-in-part. The motion is granted to the extent that Count II is dismissed without prejudice, and

Counts III and IV are dismissed with prejudice. The motion is otherwise denied.

2. Defendants' Motion to Dismiss in Case No. 8:22-cv-2210 (Doc. 32) is granted-in-part and denied-in-part.

    a. The claims of the non-Florida Plaintiffs, *see* n.5, are dismissed without prejudice for improper venue and lack of personal jurisdiction.

    b. As to the Florida Plaintiffs' claims, all claims against Defendant Honeywell International, Inc., are dismissed without prejudice, Count II is dismissed without prejudice, and Counts III and IV are dismissed with prejudice pursuant to Fed. R. Civ. P. 12(b)(6).

    c. As to Count I, the following Florida Plaintiffs' claims are dismissed without prejudice: Doc. 14 ¶ 49 (Reid), ¶ 51 (Thomas), ¶ 53 (Knowlton); ¶ 54 (Sledge), ¶ 55 (Boysen), ¶ 80 (Little), ¶ 82 (Kelly), ¶ 83 (Long), ¶ 85 (Pentrack), ¶ 86 (Kolundzic), ¶ 89 (Fernandez), ¶ 91 (Shepherd).

    d. The motion to dismiss is otherwise denied.

3. Plaintiffs are directed to file, within FOURTEEN (14) DAYS from the date of this Order, amended pleadings that correct the deficiencies identified in this Order or a notice indicating they do not intend to file amended pleadings.

**DONE** and **ORDERED** in Tampa, Florida on September 26, 2023.


Charlene Edwards Honeywell
United States District Judge

Copies furnished to:

Counsel of Record
Unrepresented Parties